116 T.C. No. 2

UNITED STATES TAX COURT

ARON B. KATZ AND PHYLLIS A. KATZ, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 460-96, 780-97,        Filed January 12, 2001.
          181-98.

        P-H, a calendar year taxpayer, owned interests in
several calendar year partnerships.  P-H filed a
bankruptcy petition on July 5, 1990.  P-H included the
portions of his distributive shares attributable to the
period prior to his bankruptcy filing on his separately
filed 1990 income tax return.  The remainder of those
distributive shares were reported by P-H's bankruptcy
estate.

        Held:  The manner in which the distributive share
of a partner in bankruptcy is allocated between the
partner and the bankruptcy estate is not a "partnership
item" under sec. 6231(a)(3), I.R.C.  Accordingly, such
allocation need not be resolved in a partnership-level
proceeding pursuant to the uniform audit and litigation
procedures of secs. 6221-6234, I.R.C.

        Held, further, where a partner's bankruptcy estate
retains beneficial ownership of a partnership interest
as of the close of the partnership taxable year, the
partner's distributive share for the entire partnership
taxable year is reportable by the bankruptcy estate.
See secs. 706(a), 1398(e), I.R.C.

Laurence E. Nemirow, Josh O. Ungerman, and William R. Cousins III, for petitioners.

James E. Archie, for respondent.

OPINION

VASQUEZ, Judge:  This matter is presently before the Court on petitioners' motion to dismiss for lack of jurisdiction.  In the event petitioners' motion to dismiss is not granted, the parties have filed cross-motions for summary judgment[1] pursuant to Rule 121.[2]  As discussed below, we shall deny petitioners' motion to dismiss and motion for summary judgment, and we shall grant summary judgment in favor of respondent.

## Background

Petitioners resided in Boulder, Colorado, at the time their petition was filed in this case.  The following summary of the relevant facts is based on the parties' stipulations and attached exhibits.

---

[1]  The motions were originally filed as motions for partial summary judgment.  Yet, subsequent to the filing of these motions, the parties settled with respect to all other issues remaining in the case.  Accordingly, we drop the "partial" modifier and treat the motions as requesting summary judgment in favor of the movant.

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

During 1990, petitioner Aron B. Katz (Mr. Katz) held limited partnership interests in a number of partnerships. Each of the partnerships used the calendar year for tax reporting purposes, as did Mr. Katz.

On July 5, 1990, Mr. Katz commenced a bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of New York by filing a petition for relief under chapter 7 of the U.S. Bankruptcy Code. Mr. Katz did not make an election under section 1398(d)(2) to bifurcate his 1990 taxable year into two short taxable years on account of his bankruptcy filing. Accordingly, Mr. Katz' individual income tax return for 1990, on which he claimed the status of a married person filing separately, covered the entire calendar year.

On account of Mr. Katz' bankruptcy proceeding, some of the partnerships undertook an interim closing of the books with respect to Mr. Katz' partnership interest in determining his distributive share of partnership tax items for 1990. In doing so, each of these partnerships subdivided the distributive share determined in respect of Mr. Katz' interest for the entire 1990 partnership taxable year (the 1990 calendar year distributive share) into two categories: The first consisted of those items attributable to the period prior to July 5, 1990 (the prepetition items), and the second consisted of those items attributable to the remainder of the 1990 calendar year (the postpetition items).

The prepetition items were specifically allocated to Mr. Katz in his individual capacity, while the postpetition items were allocated to Mr. Katz' bankruptcy estate.

A number of partnerships, however, made no attempt to subdivide the 1990 calendar year distributive share between Mr. Katz and his bankruptcy estate. Rather, each of these partnerships issued a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., to Mr. Katz reflecting the entire 1990 calendar year distributive share. With respect to these partnerships, Mr. Katz undertook an interim closing of the books on their behalf, allocating the prepetition items to himself and the postpetition items to his bankruptcy estate. Mr. Katz explained each such allocation through a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), attached to his 1990 tax return.

The prepetition items from the 1990 calendar year distributive shares which were allocated to Mr. Katz in the manner described above resulted in losses totaling $19,122,838 (the prepetition partnership losses).[3] This amount made up most of the $19,262,795 net operating loss (NOL) Mr. Katz reported for his 1990 taxable year.

---

[3] The bulk of the prepetition partnership losses was generated by a partnership entitled Century Centre Associates, Ltd. This partnership allocated $18,569,842 of overall loss to Mr. Katz with respect to the period prior to July 5, 1990, while allocating to Mr. Katz' bankruptcy estate $33,381,880 of overall income with respect to the remainder of 1990.

By notice of deficiency, respondent disallowed the NOL carryovers petitioners deducted on their jointly filed income tax returns for tax years 1991 through 1994, to the extent that the carryovers were attributable to the prepetition partnership losses. Respondent contends that the prepetition partnership losses belonged to and were properly reportable by Mr. Katz' bankruptcy estate, as opposed to Mr. Katz individually. No notice of final partnership administrative adjustment (FPAA) under section 6226 has been issued to any of the partnerships with respect to taxable year 1990.

## Discussion

Petitioners' first challenge to respondent's disallowance of the NOL carryovers is that respondent was without authority to make such a determination. Accordingly, petitioners move that the case be dismissed for lack of jurisdiction. In the event the matter is not resolved on jurisdictional grounds, petitioners move for summary judgment on the ground that the prepetition partnership losses were properly reported by Mr. Katz in his individual capacity. Respondent has filed a cross-motion for summary judgment with respect to this issue. We begin with petitioners' jurisdictional argument.

A.  Petitioners' Motion To Dismiss for Lack of Jurisdiction

Petitioners argue that respondent's notice of deficiency is invalid to the extent it disallows the NOL carryovers petitioners deducted for the tax years at issue. Petitioners contend that

the NOL carryovers constitute "affected items" governed by the unified audit and litigation procedures and that respondent has failed to comply with those procedures by not first proceeding against the relevant partnerships.

1. TEFRA Procedures

The unified audit and litigation procedures were enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 401(a), 96 Stat. 648, and are commonly referred to as the TEFRA procedures.[4] The TEFRA procedures provide a method for adjusting "partnership items" in a single, unified partnership proceeding, rather than in separate actions against each partner. See sec. 6221. In general, the Commissioner is precluded from assessing a deficiency attributable to a partnership item until after the completion of the partnership-level proceeding. See sec. 6225(a). The same prohibition extends to the assessment of a deficiency attributable to an "affected item", as the tax treatment of such an item is dependent on the treatment of a partnership item. E.g., Dubin v. Commissioner, 99 T.C. 325, 328 (1992); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 743-744 (1987); Maxwell v. Commissioner, 87 T.C. 783, 792 (1986). Accordingly, a notice of deficiency issued prior to the completion of the

---

[4] The TEFRA procedures, effective for partnership taxable years beginning after Sept. 3, 1982, have been amended since their enactment and now constitute secs. 6221 through 6234.

partnership-level proceeding is invalid to the extent it relates to a partnership item or an affected item. See GAF Corp. v. Commissioner, 114 T.C. 519, 524-526 (2000).

No FPAA was issued by respondent and no partnership-level proceedings have been commenced regarding the prepetition partnership losses in the present case. Accordingly, if the NOL carryovers at issue constitute affected items as petitioners contend, we must grant the motion to dismiss on the basis that the notice of deficiency is invalid as it relates to those items. With this procedural framework in mind, we turn to the issue of whether the NOL carryovers may be properly characterized as affected items under the TEFRA procedures.

2. Definition of Affected Item and Partnership Item

Section 6231(a)(5) defines an "affected item" as any item to the extent such item is affected by a partnership item. See also N.C.F. Energy Partners v. Commissioner, supra at 743-745; Maxwell v. Commissioner, supra at 792-793; sec. 301.6231(a)(5)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). Section 6231(a)(3) defines the term "partnership item" as any item required to be taken into account for the partnership's taxable year, to the extent the regulations establish that such item is more appropriately determined at the partnership level than at the partner level. The regulations include in the definition of a partnership item each partner's share of items of

income, gain, loss, deduction, or credit of the partnership.  See sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.

3.   Bankruptcy Regulation

The Secretary is authorized to identify by regulations certain instances in which the treatment of an item as a partnership item under the TEFRA procedures will interfere with the effective and efficient enforcement of the Internal Revenue Code.  See sec. 6231(c)(2).  The Secretary has identified the bankruptcy of a partner as one such instance.  See sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs. (the bankruptcy regulation), 52 Fed. Reg. 6793 (Mar. 5, 1987), which provides as follows:

> (a) Bankruptcy.  The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

If the bankruptcy regulation applies to convert a partnership item into a nonpartnership item, the effect of the conversion is to except the item from the TEFRA procedures.  The tax treatment of the item therefore may be determined in accordance with the deficiency procedures applicable to the partner's individual tax case.  See Computer Programs Lambda, Ltd. v. Commissioner, 89

T.C. 198, 203 (1987).

   4.   Relevant Partnership Item Inquiry

The parties believe that our jurisdiction in this case turns on whether the bankruptcy regulation operates upon the prepetition partnership losses.  Respondent argues that the regulation converts the prepetition partnership losses from partnership items to nonpartnership items, while petitioners contend that such losses fall outside the scope of the regulation.  We, however, believe that the jurisdictional issue before us is more appropriately resolved on other grounds. Respondent does not challenge the propriety of the prepetition partnership losses.  Rather, respondent contends only that those losses should have been reported by Mr. Katz' bankruptcy estate as opposed to Mr. Katz in his individual capacity.  Thus, even if we assume that the bankruptcy regulation does not operate to convert the prepetition partnership losses to nonpartnership items,[5] we are left with the issue of whether the manner in which partnership items are allocated between a partner in bankruptcy and the partner's bankruptcy estate is a determination which, pursuant to the TEFRA procedures, must be made at the partnership level.  We therefore shall determine our jurisdiction based on the resolution of this latter issue.

---

   [5]  As the determination of whether the bankruptcy regulation converts the prepetition partnership losses to nonpartnership items is not necessary to our decision, we leave that determination for another day.

### a. Fundamental Principles Relating to a Partner in Bankruptcy and the Partner's Bankruptcy Estate

We begin our discussion with a review of some fundamental principles relating to the bankruptcy of an individual debtor. When an individual files a chapter 7 petition in bankruptcy, a bankruptcy estate is created as a separate entity for purposes of both bankruptcy law and tax law. See 11 U.S.C. sec. 541(a) (1994); sec. 1398.[6] The estate succeeds to all legal and equitable interests of the debtor in property, as well as certain tax attributes of the debtor. See 11 U.S.C. sec. 541(a)(1); sec. 1398(g). The estate computes its tax liability in the same manner as a married individual filing a separate return, see sec. 1398(c), and the chapter 7 trustee is responsible for filing tax returns throughout the duration of the bankruptcy proceeding, see sec. 6012(b)(4); see also 11 U.S.C. sec. 704(8) (1994).

### b. Allocation Inquiry as Framed by Petitioners

Petitioners contend that the manner in which the prepetition partnership losses are allocated "among the partners" constitutes a partnership item under the TEFRA procedures. We agree with petitioners as to the merit of this proposition. As provided in section 6226(f), the manner in which partnership items are

---

[6] Sec. 1398 was enacted as part of the Bankruptcy Tax Act of 1980, Pub. L. 96-589, sec. 3, 94 Stat. 3397. Sec. 1398 does not apply to all types of bankruptcy proceedings but rather only to proceedings under ch. 7 (relating to liquidations) or ch. 11 (relating to reorganizations) of the U.S. Bankruptcy Code in which the debtor is an individual. See sec. 1398(a).

allocated among the partners is a determination which this Court

may make in the course of a partnership-level proceeding:

> SEC. 6226(f). Scope of Judicial Review.--A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership  administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.  [Emphasis added.]

Since the allocation of partnership items among the partners may

be resolved at the partnership level, it follows that such

allocation is itself a partnership item under the TEFRA

procedures.  See Rule 240(b)(2) (defining a "partnership action"

as an "action for readjustment of partnership items" under

section 6226); see also H. Conf. Rept. 97-760, at 611 (1982),

1982-2 C.B. 600, 668 (stating that "Neither the Secretary nor the

taxpayer will be permitted to raise nonpartnership items in the

course of a partnership proceeding").

While we agree with petitioners that the manner in which

partnership items are allocated among the partners is a

determination that must be resolved at the partnership level, we

note that respondent is not seeking to allocate the prepetition

partnership losses from Mr. Katz to one or more other partners of

record in the subject partnerships.  Rather, respondent questions

the allocation of partnership losses between one partner of

record and that partner's bankruptcy estate.  Accordingly, the

relevant allocation is not expressly within the scope of section 6226(f).  See, e.g., Hang v. Commissioner, 95 T.C. 74, 80 (1990) (describing an allocation of subchapter S items between a shareholder of record and the purported beneficial owner of such shares as not expressly within the scope of section 6226(f)).[7]

c.    Proper Allocation Inquiry

The issue that we must decide is, once a partnership has allocated partnership items in respect of the interest of a partner who has commenced a bankruptcy proceeding during the partnership taxable year, whether the subdivision of those items between the partner and his bankruptcy estate constitutes a partnership item under the TEFRA procedures.  Resolution of this is tantamount to determining whether a partner in bankruptcy and

---

[7]  Pursuant to the S corporation audit and litigation procedures (S corporation procedures), secs. 6241 through 6245, a "subchapter S item" is defined as "any item of an S corporation to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the corporate level."  Sec. 6245. The tax treatment of a subch. S item generally must be determined in a corporate-level proceeding.  See sec. 6241.

The S corporation procedures were enacted shortly after the TEFRA procedures as part of the Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 4(a), 96 Stat. 1691.  (The S corporation procedures were repealed as of Dec. 31, 1996, by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1307(c)(1), 110 Stat. 1781.)  Sec. 6244 makes certain provisions of the TEFRA procedures relating to partnership items applicable to subch. S items, except as modified or made inapplicable by the regulations.  Among the incorporated provisions is sec. 6226, which governs the judicial determination of partnership items. See sec. 6244(2); see also S. Rept. 97-640, at 25 (1982), 1982-2 C.B. 718, 729.

his bankruptcy estate should be treated as separate "partners" for purposes of section 6226(f).

### i. Should a Debtor and His Bankruptcy Estate Be Treated as One or Two Partners?

We believe that a partner in bankruptcy and his bankruptcy estate are appropriately treated as a single partner for purposes of TEFRA procedures.[8]  While the bankruptcy estate arises as a distinct legal entity upon the debtor's filing of a petition for relief, the estate cannot be characterized as unrelated to the debtor.  Rather, the bankruptcy estate functions as the debtor's economic proxy, created to facilitate the disposition of the debtor's property pursuant to the Federal bankruptcy laws.  It is between these two related entities that the beneficial ownership of a single partnership interest will change hands through the course of the bankruptcy proceeding.  See 11 U.S.C. sec. 541(a)(1) (1994) (initial transfer to the bankruptcy estate); id. sec. 554(a) (permitting bankruptcy trustee to abandon property of the estate that is burdensome or of inconsequential value); id. sec. 726(a)(6) (distribution to the debtor of any property of the estate that remains after allowed claims have been satisfied).  When viewed from the perspective of the partnership in its determination of each partner's distributive share of partnership

---

[8]  Mr. Katz and his bankruptcy estate each satisfy the definition of a partner under sec. 6231(a)(2).  However, we do not interpret this characterization as requiring that the two be treated as separate partners under the TEFRA procedures.

tax items, a partner in bankruptcy and his bankruptcy estate are properly considered as one and the same.

      ii.  <u>Is the Allocation of a Partner's Distributive Share Between the Partner and His Bankruptcy Estate a Determination That Should Be Made at the Partnership Level?</u>

The TEFRA provisions and the accompanying legislative history reflect a desire on the part of Congress to have only those items that are more appropriately determined at the partnership level constitute the subject of a partnership-level proceeding. See secs. 6221, 6231(a)(3); H. Conf. Rept. 97-760, at 600 (1982), 1982-2 C.B. 600, 662. The determination of the manner in which items of income, gain, loss, deduction, and credit are allocated among the various partners in a partnership is one best made at the partnership level, because the allocation to one partner necessarily affects the allocation to another. Not surprisingly, the partnership must provide the distributive shares of each of its partners in its information tax return. See Schedule K-1 to Form 1065, U.S. Partnership Return of Income. Yet once the partnership has determined the distributive share of a partner who happens to be in bankruptcy, there exists no statutory obligation upon the partnership to subdivide the distributive share between such partner and his bankruptcy estate.[9] This stands to reason, as such a suballocation will

---

[9] This fact will be illustrated in our discussion <u>infra</u> of the merits of the allocation of the prepetition partnership losses as between Mr. Katz and his bankruptcy estate.

have no effect on the remaining partners. The subdivision of partnership tax items between the two related but independently taxed entities is thus not a determination "required to be taken into account for the partnership's taxable year" as contemplated by section 6231(a)(3).

5.   Conclusion as to Jurisdictional Issue

We hold that the manner in which the distributive share of a partner in bankruptcy is allocated between the partner in his individual capacity and his bankruptcy estate is not a partnership item under the TEFRA procedures. Accordingly, the merits of such an allocation need not be resolved in a partnership-level proceeding, but rather may be resolved in a proceeding at the partner level such as the present one.[10] Petitioners' motion to dismiss for lack of jurisdiction shall be denied.

B.   Parties' Cross-Motions for Summary Judgment

The parties have each moved for summary judgment with respect to whether the prepetition partnership losses were to be reported by Mr. Katz or his bankruptcy estate. Summary judgment may be granted only if it is demonstrated that no genuine issue exists as to any material fact and that a decision may be entered

---

[10]   We note that our holding is consistent with Gulley v. Commissioner, T.C. Memo. 2000-190, which addressed in a partner-level proceeding the proper allocation of partnership losses between a taxpayer in bankruptcy and the taxpayer's bankruptcy estate. The jurisdictional issue, however, was not addressed in that case.

as a matter of law.  See Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  As there exists no factual dispute pertaining to the disputed allocation, we shall address the legal issue before us.

Gross income of a bankruptcy estate is defined as the gross income of the debtor to which the estate is entitled pursuant to the U.S. Bankruptcy Code.  See sec. 1398(e)(1).  Under bankruptcy law, the bankruptcy estate is entitled to the income generated by property of the estate, see 11 U.S.C. sec. 541(a)(6), and a debtor's partnership interest becomes property of the estate upon the filing of the bankruptcy petition, see <u>id.</u> sec. 541(a)(1).  Gross income of the estate, however, does not include amounts received or accrued by the debtor prior to the commencement of the bankruptcy proceeding.  See sec. 1398(e)(1).  Gross income of the debtor is that which remains after excluding those items which are included in gross income of the estate.  See sec. 1398(e)(2).

With section 1398 in mind, we turn to the relevant provisions governing the income taxation of partners and partnerships.  A partner must include in gross income his share of income, gain, loss, deduction, or credit for any taxable year of the partnership ending with or within the partner's taxable year.  See sec. 706(a); see also sec. 1.706-1(a)(1), Income Tax Regs.  The critical date under this provision is the last day of

the partnership taxable year, for it is on this day that the partner is treated as receiving his share of the aforementioned partnership tax items.  See Gulley v. Commissioner, T.C. Memo. 2000-190.

1.  Respondent's Position

Respondent contends that the general rules recited above are sufficient to determine the proper reporting of the prepetition partnership losses as between Mr. Katz individually and Mr. Katz' bankruptcy estate.  Respondent's two-step analysis proceeds as follows:  First, under section 706(a), the partnerships are treated as distributing Mr. Katz' 1990 distributive share of partnership tax items on December 31, 1990, the last day of the taxable year of each such partnership.  Second, given that Mr. Katz' bankruptcy estate succeeded to the partnership interests on July 5, 1990, and held beneficial ownership of such interests on December 31, 1990, all the 1990 calendar year distributive shares (which include the prepetition partnership losses) belonged to and were reportable by Mr. Katz' bankruptcy estate under section 1398(e)(1).  Respondent's analysis is consistent with the treatment of the issue in 15 Sheinfeld et al., Collier on Bankruptcy, par. TX13.04[2][d] (15th ed. rev. 2000):

> Thus, the partnership would allocate the entire year's income or loss to the person who is the partner on the last day of the partnership's taxable year.  If the debtor partner's bankruptcy estate still exists when the partnership's taxable year ends, the estate, not the debtor partner, would receive the allocation. * * * [Fn. ref. omitted.]

Petitioners argue that respondent's analysis is flawed. Petitioners invoke several Code provisions which they contend require a partnership to allocate to a partner in bankruptcy the portion of his distributive share for the partnership taxable year which is attributable to the period prior to the commencement of the partner's bankruptcy proceeding. We address these arguments below.

2.  Petitioners' Arguments under Section 1398

a.  Section 1398(d)(2)

Petitioners contend that the failure to allocate the prepetition partnership losses to Mr. Katz individually is tantamount to forcing a section 1398(d)(2) short taxable year election upon Mr. Katz with respect to his partnership interests. Pursuant to section 1398(d)(2), a debtor may elect to divide the taxable year in which he files bankruptcy into two short years, the first of which ends on the day prior to the commencement of the bankruptcy proceeding and the second of which begins on the bankruptcy commencement date.[11]  If, however, the debtor declines

---

[11]  A debtor's Federal income tax liabilities attributable to taxable years which have closed prior to the commencement of the bankruptcy proceeding are assumed by and collectible from the bankruptcy estate.  See 11 U.S.C. sec. 101(10) (1994) (definition of "creditor"); id. sec. 502(a) (general rule regarding allowance of claims against the bankruptcy estate).  Accordingly, if the debtor makes the sec. 1398(d)(2) election, his tax liability for the first short taxable year becomes an allowable claim against the bankruptcy estate as a claim arising prior to the bankruptcy

(continued...)

to make the section 1398(d)(2) election, the debtor's taxable year is determined without regard to the bankruptcy proceeding.[12] See sec. 1398(d)(1).

Petitioners contend that, even though Mr. Katz chose not to make the section 1398(d)(2) election, the allocation of the prepetition partnership losses to his bankruptcy estate effectively forces such an election upon him. Petitioners' argument proceeds along the following lines: First, had Mr. Katz made the section 1398(d)(2) election, the prepetition partnership losses would have been allocated to Mr. Katz, thereby generating an NOL for the first short taxable year. Second, as a consequence to the making of the section 1398(d)(2) election, the bankruptcy estate would have succeeded to Mr. Katz' NOL carryovers that existed as of July 5, 1990 (the first day of the second short taxable year), pursuant to section 1398(g)(1). Third, since the allocation of the prepetition partnership losses directly to the estate has the same result as allowing those

---

[11](...continued)
filing. See In re Johnson, 190 Bankr. 724, 726 (Bankr. D. Mass. 1995); In re Moore, 132 Bankr. 533, 534 (Bankr. W.D. Pa. 1991); In re Mirman, 98 Bankr. 742, 745 (Bankr. E.D. Va. 1989); In re Turboff, 93 Bankr. 523, 525 (Bankr. S.D. Tex. 1988).

[12] In the absence of a sec. 1398(d)(2) election, the debtor's tax liability for the entire year in which the bankruptcy proceeding commences is collectible directly from the debtor individually, with no portion being collectible from the bankruptcy estate. See In re Smith, 210 Bankr. 689, 692 (Bankr. D. Md. 1997); In re Johnson, supra at 726; In re Moore, supra at 534; In re Mirman, supra at 745; In re Turboff, supra at 525.

losses to be inherited by the estate through the NOL carryover, the allocation of those losses to Mr. Katz' bankruptcy estate is the equivalent of Mr. Katz' making the section 1398(d)(2) short-year election.

Petitioners' argument is flawed in a number of respects, with the principal error lying in the first assumption--that the prepetition partnership losses would have been allocated to Mr. Katz individually under section 1398(e) had he made the section 1398(d)(2) short-year election.  Under section 706(a), a partner's share of partnership loss is distributed as of the last day of the taxable year of the <u>partnership</u>.  Given that section 1398(d)(2) affects only the taxable year of the <u>partner</u>, the short-year election has no effect on the date on which the partnership loss is deemed to be distributed by the partnership.  In other words, even if Mr. Katz had made the section 1398(d)(2) election, the prepetition partnership losses would not have been distributed by the partnerships until the close of the respective partnership taxable years pursuant to section 706(a).  See Purintun, "Partnerships and Partners in Bankruptcy", 11 J. Partnership Taxn. 342, 346 (1995) ("whether or not the debtor partner makes the short taxable year election, the distributive share of income or loss from the entire partnership taxable year in which the partner's bankruptcy petition is filed should be included in the return of the estate"); American Bar Association

- 21 -

Section of Taxation, "Report of the Section 108 Real Estate and Partnership Task Force: Part II", 46 Tax Law. 397, 448-449 (1993) (concluding that "when an individual files bankruptcy prior to the close of the partnership's taxable year, his bankruptcy estate would get the benefit or detriment of the partnership income or loss for the entire year" and noting that "the section 1398(d) short period election to treat the debtor's taxable year of bankruptcy filing as two taxable years would not affect the result"). As petitioners' argument rests upon a faulty assumption, we reject it.

b. Section 1398(b)(2)

Petitioners note that section 1398(b)(2) provides that "the interest in a partnership of a debtor who is an individual shall be taken into account under this section in the same manner as any other interest of the debtor." Petitioners then contend that, since income or loss received during the prepetition period on property other than a partnership interest was taxable to Mr. Katz individually under section 1398(e), section 1398(b)(2) mandates that the portion of the partnership income or loss attributable to the prepetition period must also be allocated to Mr. Katz in his individual capacity.

Petitioners read section 1398(b)(2) out of context. Section 1398(b)(2) provides as follows:

(2) Section does not apply at partnership level.--For purposes of subsection (a), a partnership shall not be treated as an individual, <u>but</u> the interest in a partnership of a debtor who is an individual shall be taken into account under this section in the same manner as any other interest of the debtor. [Emphasis added.]

When read in conjunction with section 1398(a) (providing that section 1398 applies only to certain bankruptcy proceedings in which the debtor is an <u>individual</u>), the purpose of the first portion of section 1398(b)(2) is to render section 1398 inapplicable to a partnership in bankruptcy. The second portion of section 1398 (upon which petitioners base their argument) is properly interpreted as a clarification that even though section 1398 does not apply to a partnership in bankruptcy, it nonetheless governs the tax treatment of a partnership interest of an individual in bankruptcy. Section 1398(b)(2) is thus not intended to articulate a specific manner in which the income or loss from a partnership interest is to be divided between a partner and his bankruptcy estate. Rather, such specifics are addressed in section 1398(e). Petitioners' reliance upon section 1398(b)(2) is misplaced.

3. <u>Petitioners' Argument Under Section 706(d)(1)</u>

Section 706(a) provides that the distributive share of income or loss for the entire partnership taxable year is deemed to be distributed to the holder of the partnership interest as of the close of the partnership taxable year. Given that Mr. Katz'

bankruptcy estate held beneficial ownership of the partnership interests as of the close of the various partnership taxable years, it is incumbent upon petitioners to identify an exception to the section 706(a) general rule in order for the prepetition partnership losses to be allocated to Mr. Katz in his individual capacity.  In this regard, petitioners offer section 706(d)(1).

Petitioners argue that the varying interests rule under section 706(d)(1) was triggered when Mr. Katz filed his chapter 7 petition in bankruptcy.  Section 706(d)(1), enacted as part of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 72, 98 Stat. 494, 589, provides in pertinent part as follows:

> (1) In general.-- * * * if during any taxable year of the partnership there is a change in any partner's interest in the partnership, each partner's distributive share of any item of income, gain, loss, deduction, or credit of the partnership for such taxable year shall be determined by the use of any method prescribed by the Secretary by regulations which takes into account the varying interests of the partners in the partnership during such taxable year. [Emphasis added.]

In particular, petitioners contend that Mr. Katz experienced a "change in interest" under section 706(d)(1) when his ownership interests in the partnerships were extinguished by the operation of 11 U.S.C. sec. 541(a)(1).  The argument follows that each partnership was required under section 706(d)(1) to make an allocation in respect of Mr. Katz' extinguished interest.

Respondent contends that section 706(d)(1) has no application to a transfer of a partnership interest pursuant to

11 U.S.C. sec. 541(a)(1). As explained below, we agree. See Gulley v. Commissioner, T.C. Memo. 2000-190 ("Petitioner's transfer of his interest in * * * [the partnership] to the bankruptcy estate was not a change in interest requiring an allocation of his distributive share of * * * partnership items between himself and the bankruptcy estate for purposes of section 706(d)(1).").

Section 706(d)(1) cannot be read in isolation. It must be read in the larger context of section 706, particularly section 706(c). Prior to its amendment by DEFRA (discussed infra) but following its amendment by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 213(c)(1), 90 Stat. 1547, section 706(c)(2) provided as follows:

> (2) Partner who retires or sells interest in partnership.--
>
> > (A) Disposition of entire interest.--The taxable year of a partnership shall close--
> >
> > > (i) with respect to a partner who sells or exchanges his entire interest in a partnership, and
> > >
> > > (ii) with respect to a partner whose interest is liquidated * * *.
> >
> > Such partner's distributive share of items described in section 702(a) for such year shall be determined, under regulations prescribed by the Secretary, for the period ending with such sale, exchange, or liquidation.
> >
> > (B) Disposition of less than entire interest.--The taxable year of a partnership shall not close * * * with respect to a partner who

> sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced (whether by entry of a new partner, partial liquidation of a partner's interest, gift, or otherwise)<u>, but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year</u>.  [Emphasis added.]

The language used in the prior version of section 706(c)(2) reveals that it served two distinct but complementary functions. First, former section 706(c)(2) identified certain events (triggering events) which required the partnership either to close its taxable year with respect to a partner or to determine a partner's distributive share by taking into account the change in the partner's interest which had occurred over the course of the partnership taxable year.  Second, former section 706(c)(2) addressed the manner in which a partner's distributive share was to be determined as a result of the occurrence of a triggering event.

DEFRA amended section 706(c)(2) by severing its two functions and moving the second over to newly enacted section 706(d).  In particular, the provisions of former section 706(c)(2) emphasized above were stricken and consolidated to form the general rule set out in section 706(d)(1).[13]  The purpose behind this consolidation was to facilitate the addition of

---

[13]  Subsec. (d) was added to sec. 706 by sec. 72(a) of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, 589.  The deletions from sec. 706(c)(2) were mandated by DEFRA sec. 72(b), captioned "Conforming Amendments."

specific rules in later portions of section 706(d) aimed at

curbing the retroactive allocation of deductions to late-entering

partners through the use of the cash method of reporting, see

sec. 706(d)(2), or through the use of tiered partnerships, see

sec. 706(d)(3).  The conference report accompanying DEFRA

explains as follows:

> The Tax Reform Act of 1976 amended the partnership
> provisions to preclude a partner who acquires his
> interest late in the taxable year from taking into
> account partnership items incurred prior to his entry
> into the partnership ("retroactive allocations" of
> partnership losses).  The <u>1976 Act provided</u> that <u>when
> partners' interests change</u> during the taxable year,
> each partner's share of various items of partnership
> income, gain, loss, deduction, and credit is to be
> determined by taking into account <u>each partner's
> varying interest</u> in the partnership during the taxable
> year.
>
> Some taxpayers argue that the 1976 Act rule may be
> avoided in the case of tiered partnership arrangements
> on the theory that losses sustained by the lower-tier
> partnerships are allocable to the day in the upper-tier
> partnership's taxable year on which the lower-tier
> partnership's taxable year closes.  Similarly,
> partnerships using the cash receipts and disbursements
> method of accounting have avoided the retroactive
> allocation rules by deferring actual payment of accrued
> deductions until near the end of the partnership's
> taxable year.  [H. Conf. Rept. 98-861, at 855 (1984),
> 1984-3 C.B. (Vol. 2) 1, 109; emphasis added.]

The origins of section 706(d)(1) reveal that it was not

intended to articulate an additional "change of interest"

triggering event which would require the application of special

rules to determine a partner's distributive share for the

partnership taxable year in which the change occurred.  Rather,

the reference in section 706(d)(1) to a "change in any partner's interest" is properly interpreted as a reference to those events articulated in section 706(c)(2). In short, section 706(d)(1) assumes the occurrence of a triggering event; it does not provide for one.

Thus, contrary to petitioners' assertions, the determination of whether section 706(d)(1) requires the subdivision of a partner's distributive share between the partner individually and the partner's bankruptcy estate cannot be made with reference to section 706(d)(1) alone. Rather, it must first be determined whether a transfer from a debtor to his bankruptcy estate pursuant to 11 U.S.C. sec. 541(a)(1) constitutes a triggering event under section 706(c)(2).

To the extent Mr. Katz' partnership interests were affected by the filing of his chapter 7 bankruptcy petition, they were completely terminated. Accordingly, the relevant provision of section 706(c)(2) is subparagraph (A), which addresses dispositions of an entire partnership interest. The determination of whether the transfer of Mr. Katz' partnership interests to his bankruptcy estate constitutes a sale, exchange, or liquidation under section 706(c)(2)(A) is rather straightforward. Section 1398(f)(1) dictates that the transfer of property from a debtor to his bankruptcy estate which occurs by reason of the bankruptcy filing shall not be treated as a disposition for purposes of any provision of the Internal Revenue

Code which assigns tax consequences to a disposition.  See also Gulley v. Commissioner, T.C. Memo. 2000-190; Smith v. Commissioner, T.C. Memo. 1995-406.  As the transfer of Mr. Katz' partnership interests to his bankruptcy estate did not constitute a triggering event under section 706(c)(2), Mr. Katz did not thereby experience a "change in interest" under section 706(d)(1).  Section 706(d)(1) thus has no application to this case.

### 4.   Conclusion as to Disputed Allocation

We hold that the prepetition partnership losses were properly reportable in their entirety by Mr. Katz' bankruptcy estate pursuant to sections 706(a) and 1398(e).[14]  We therefore sustain respondent's disallowance of the NOL carryovers claimed by petitioners for tax years 1991 to 1994, to the extent those carryovers are attributable to the prepetition partnership losses Mr. Katz claimed on his separately filed return for 1990.

---

[14]  To the extent not discussed in this opinion, we find petitioners' arguments in favor of a contrary holding to lack merit.

To reflect the foregoing,

An appropriate order will be issued denying petitioners' motion to dismiss, denying petitioners' motion for summary judgment, and granting respondent's motion for summary judgment, and decisions will be entered under Rule 155.