118 T.C. No. 34


UNITED STATES TAX COURT


RODNEY J. BLONIEN AND NOREEN E. BLONIEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2660-00.                    Filed June 12, 2002.


        R issued an "affected items" notice of deficiency
to P for 1992, attributable to P's distributive share
of cancellation of debt income of an insolvent law
partnership.  R claims that the period for assessment
of partnership items under sec. 6229, I.R.C., has not
expired by reason of the extension of the period of
limitations by the partnership's tax matters partner.
P claims the separate period of limitations relating to
partnership items in sec. 6229, I.R.C., does not apply
to him because he never became a partner in the
partnership, and that the period of limitations for
assessing nonpartnership items under sec. 6501, I.R.C.,
has expired.  R claims we lack jurisdiction to consider
P's argument that he was not a partner, and that
assessment of the deficiency is therefore timely under
sec. 6229, I.R.C.
        <u>Held</u>:  We have no jurisdiction to consider P's
argument that he was not a partner.  Whether P was a
partner is a partnership item that can be challenged
only at the partnership level.  P has no standing to
challenge on due process grounds the partnership-level

determination that he was a partner because (1) P claimed on prior returns that he was a partner, and (2) P received a Schedule K-1 from the partnership for the year in issue and failed to file with his return a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request, notifying respondent of his position that he was not a partner. Therefore, the applicable period of limitations under sec. 6229, I.R.C., for R to assess the deficiency has not expired. Held, further, we have jurisdiction to consider partner-level adjustments in a Rule 155 computation.

R. Todd Luoma, for petitioners.

Kathryn K. Vetter, for respondent.

BEGHE, Judge: On December 17, 1999, respondent issued petitioners an "affected items" notice of deficiency of $11,826 in their 1992 Federal income tax. The deficiency is attributable to inclusion in the income of petitioner Rodney J. Blonien (Mr. Blonien) of his distributive share of cancellation of debt (COD) income of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey (Finley Kumble), a law partnership that had become insolvent.

Petitioners allege assessment is barred by the 3-year period of limitations provided in section 6501(a)[1] because Mr. Blonien was not a partner of Finley Kumble subject to the alternative period of limitations provided by section 6229 for the assessment

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

of partnership and affected items.  Respondent argues that we lack jurisdiction to question Finley Kumble's decision to treat Mr. Blonien as a partner, and that Mr. Blonien was a partner.

We hold that we have no jurisdiction in this proceeding to consider Mr. Blonien's argument that he was not a partner in Finley Kumble.  To the extent the determination would affect the allocation of partnership items among the other partners, the determination of who is a partner is a partnership item that must be challenged at the partnership level.  Therefore, assessment of the deficiency against petitioners for 1992 arising out of Mr. Blonien's share of Finley Kumble's items is not barred by the applicable statute of limitations.

We have jurisdiction in this deficiency proceeding to adjudicate the effect of Mr. Blonien's share of partnership items (determined at the partnership level) on petitioners' tax liability.  The deficiency will be determined in accordance with Rule 155.

## FINDINGS OF FACT

The parties have stipulated some of the facts.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners lived in Elk Grove, California, when they filed their petition in this case.

Mr. Blonien is an attorney who has been admitted to practice law in California since 1972.

Before the years in issue, Mr. Blonien worked as an attorney for the State of California.  He began his legal career in 1972 as an attorney for the California attorney general's office and continued in that position until he was appointed legal affairs secretary to then Governor Ronald Reagan.  After working for the Governor, Mr. Blonien became executive director of the California Peace Officer's Association.  He then returned to the California attorney general's office as a senior assistant attorney general and thereafter was appointed special assistant attorney general.  In 1982, he was appointed legislative secretary and policy director to Governor George Deukmejian.  In December 1984, he moved from the Governor's office to be undersecretary of the Youth and Adult Corrections Agency of California.

In November 1986, then California Treasurer Jess Unruh arranged for Mr. Blonien to meet former New York Governor Hugh L. Carey, then a senior partner in Finley Kumble.  Governor Carey introduced Mr. Blonien to other senior partners of Finley Kumble, including Steven Kumble and Harvey Myerson.  After the meeting, Governor Carey informed Mr. Blonien that Messrs. Kumble and Myerson intended to recommend to Finley Kumble that Mr. Blonien be offered the opportunity to join Finley Kumble as a partner.

In December 1986, Mr. Blonien asked Governor Carey about the status of a Finley Kumble offer.  Governor Carey informed Mr. Blonien that the offer was "on", and that Mr. Blonien should

start a modest branch office of Finley Kumble in Sacramento, California. Mr. Blonien continued to have conversations with Governor Carey about opening a Finley Kumble branch office in Sacramento.

In March 1987, Mr. Blonien reached an oral agreement to join Finley Kumble as a partner. Under the terms of the agreement, Mr. Blonien was to receive a draw of $8,750 per month and was to make a capital contribution to Finley Kumble of $80,000. Finley Kumble agreed to arrange for Mr. Blonien to borrow the funds to make the capital contribution from its lender, Manufacturers Hanover Bank.[2]

On April 1, 1987, Mr. Blonien left the California State government to begin practicing law with Finley Kumble in Sacramento. Acting on behalf of Finley Kumble, Mr. Blonien sublet office space from another law firm, obtained office

---

[2]The terms of the offer are set forth in a letter to Mr. Blonien dated Mar. 4, 1987, from Steven Kumble, Harvey Myerson, Robert Washington, and Governor Carey. Mr. Blonien testified that he did not receive this letter until after Sept. 2, 1987. Mr. Blonien testified that Governor Carey orally informed him of these same basic terms in March 1987, but that he did not receive written confirmation of the terms until September 1987. Respondent argues that Mr. Blonien's testimony is self-serving, and that it is incredible that Mr. Blonien would leave his government job without written confirmation of Finley Kumble's offer. It does not matter in the case at hand whether the offer and acceptance were oral or written, and we therefore need not decide when Mr. Blonien first received written confirmation of the terms of the partnership offer. Mr. Blonien testified that he assumed, when he started working for Finley Kumble, that his relationship with the firm would be as described in the letter dated Mar. 4, 1987.

furniture and equipment from a friend who had closed a real estate office, hired office employees, obtained a telephone number, and opened the Sacramento office for Finley Kumble.  On the day he opened the Finley Kumble Sacramento office, California treasurer Jess Unruh called Mr. Blonien to inform him that Finley Kumble would be appointed counsel for the issuer or underwriter in several new California agency bond transactions.  Finley Kumble began to pay the payroll for its Sacramento office by the third week of April, reimbursed Mr. Blonien for office expenses advanced by him, and paid him a draw of approximately $4,000 every 2 weeks.  See infra note 3.  A month or so after the opening of the Sacramento office, Finley Kumble sent out a notice that Mr. Blonien had joined the firm as a partner and that the Sacramento office was open.  Mr. Blonien's title was partner, and he expected that he would be a partner of Finley Kumble in all respects once the paperwork was finalized.

During summer 1987, Mr. Blonien read an article in "The American Lawyer" concerning Finley Kumble's financial problems.  These problems arose from Finley Kumble's practice of factoring its accounts receivable and its failures, upon collecting the accounts, to repay the factor's advances.  A number of partners of Finley Kumble left the firm around this time, and Mr. Blonien questioned whether he should remain with the firm.

On September 2, 1987, Finley Kumble sent Mr. Blonien a copy of the partnership agreement to sign along with loan documents to execute to borrow the funds necessary to make his capital contribution. Because of his concerns about Finley Kumble's financial viability, Mr. Blonien did not sign the partnership agreement. During October 1987, Finley Kumble pressured Mr. Blonien to sign the partnership agreement and make his capital contribution. In November 1987, Mr. Blonien met with Governor Carey, Steven Kumble, and Jim Normile to discuss his concerns about Finley Kumble's viability. Mr. Blonien still did not feel reassured about Finley Kumble's viability, and he did not sign the partnership agreement or the loan documents.

In late November and early December, several of Mr. Blonien's bond clients informed him that they would be seeking other counsel because Finley Kumble's well-publicized financial problems called into question the value of the legal opinions Finley Kumble would be required to issue in connection with the bond transactions that Mr. Blonien had originated. Despite these problems, which led to the loss of some clients and writedowns of billable time, Finley Kumble did collect fees for its legal services in bond transactions that Mr. Blonien had originated.

On December 8, 1987, after Finley Kumble announced its dissolution, Mr. Blonien sent a letter to Finley Kumble in which he stated that he was withdrawing as a partner of the

partnership:  "It is with a great deal of reluctance that I, this date, tender my resignation as a partner in the firm of Finley Kumble".  Mr. Blonien subsequently joined the law firm of Whitman & Ransom, along with former Finley Kumble partners Governor Carey and Jim Normile and other members of the public finance department of Finley Kumble.

Mr. Blonien received more than $64,000 in draws from Finley Kumble in 1987.[3]  Petitioners did not report receiving wages from Finley Kumble on their Form 1040, U.S. Individual Income Tax Return, for 1987.  Instead, petitioners reported Mr. Blonien's distributive share of partnership income from Finley Kumble on Schedule E, Supplemental Income and Loss, in the amount of only $15,310.  Petitioners did not file with their 1987 return Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request, with respect to Finley Kumble, or otherwise

---

[3]Mr. Blonien testified that he received draws of approximately $8,000 per month.  The formal offer letter dated Mar. 4, 1987, which Mr. Blonien claims he did not receive until months later, indicates draws of $8,750 per month beginning Apr. 1, 1987.  Mr. Blonien testified that the offer letter set forth the terms of his agreement with Finley Kumble.  Yet he also testified that he thought his compensation was only about $8,000 per month.  The parties did not offer conclusive evidence of the exact amount Mr. Blonien received from Finley Kumble in 1987. Presumably, Mr. Blonien received these draws from April through at least November 1987 (8 months).  The terms of the offer letter suggest that Mr. Blonien likely received at least $70,000 in distributions from Finley Kumble during 1987.  In any event, Mr. Blonien received substantially more money from Finley Kumble in 1987 than petitioners reported as income on their Federal income tax returns.

notify the Internal Revenue Service that they were claiming that Mr. Blonien was not a partner in Finley Kumble.

On February 24, 1988, several of Finley Kumble's creditor banks filed an involuntary petition under chapter 7 of the Bankruptcy Code against Finley Kumble. On March 4, 1988, the bankruptcy court granted relief to Finley Kumble under chapter 11 of the Bankruptcy Code. In 1992, a substantial amount of Finley Kumble's debts was discharged in the bankruptcy proceeding.

On Schedule E attached to their 1988 Federal income tax return, petitioners reported a nonpassive partnership loss of $106 from Finley Kumble and substantial partnership income from the Whitman & Ransom law firm. Mr. Blonien believes that petitioners reported this loss on the basis of a Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., he received from Finley Kumble. Petitioners did not file Form 8082 with respect to Finley Kumble with their 1988 return or otherwise notify the Internal Revenue Service that they were claiming that Mr. Blonien was not a partner in Finley Kumble.

On May 23, 1991, Mr. Blonien entered into a settlement agreement with Francis Musselman, the chapter 11 trustee for Finley Kumble. Under the settlement agreement, Mr. Blonien agreed to pay $15,000 over a period of 10 years, together with interest at the rate of 10 percent per year, to the Finley Kumble bankruptcy estate. The settlement agreement referred to and

defined Mr. Blonien as the "partner". Mr. Blonien entered into the settlement agreement because the settlement amount was less than the legal cost he would have incurred in defending against the trustee's claim.

On September 21, 1993, Finley Kumble filed its 1992 Form 1065, U.S. Partnership Return of Income. On this return, which was signed on behalf of Finley Kumble by Mr. Musselman as trustee, the firm reported that it had 280 partners, including Mr. Blonien. On the face of the return at line 7, Other income (loss), Finley Kumble referenced "SEE STATEMENT 1", which was a Form 8275, Disclosure Statement, containing an Item 2 "CANCELLATION OF INDEBTEDNESS $55,777,452"; Statement 2 to the return indicated that this amount had been included in "OTHER INCOME INCLUDED IN SCHEDULE M-1, LINE 9: INCOME FROM CANCELLATION OF DEBT." The last paragraph of the attachment to the Disclosure Statement states as follows:

> On December 9, 1991, the Bankruptcy Court entered an order confirming the Chapter 11 plan proposed by the Trustee, with certain amendments ("Plan"). This order became final and non-appealable in February, 1992 and the Plan became effective on March 19, 1992 ("Effective Date"). In the Closing Agreement being negotiated with the Internal Revenue Service ("IRS"), it is expected that the Trustee will stipulate the amount of cancellation of indebtedness income ("COD") to be $55,777,452. This COD has been calculated using various estimates and methods as requested by the IRS. The COD has been determined using the assets of the Partnership at the beginning of 1992, the expected contributions of all the Finley partners, and the estimate of the allowed claims in their appropriate

classification at the Effective Date. The COD has been allocated to the partners based upon a formula developed with the IRS. If no Closing Agreement is entered into, the Trustee may amend the return to reflect an alternative position with respect to the timing of recognition of COD income.

Mr. Blonien received a Schedule K-1 from Finley Kumble for 1992, indicating that his distributive shares of Finley Kumble items were as follows:

| Partnership Item | Distributive Share |
|---|---|
| Ordinary income (loss) | ($1,252) |
| Interest | 127 |
| Net long-term capital gain (loss) | (8) |
| Sec. 1231 gain (loss) | (10) |
| Income from cancellation of debt | 37,212 |

The Schedule K-1 indicated that Mr. Blonien had a 0.0170-percent interest in Finley Kumble's profits and losses, and a 0.0345-percent interest in Finley Kumble's capital. The Schedule K-1 also indicated that Mr. Blonien had a yearend negative capital account of $13,717.

On October 15, 1993, pursuant to extensions, petitioners filed their 1992 Federal income tax return, which respondent received on October 20, 1993.

Petitioners reported $2,000 of COD income from Finley Kumble on line 22, page 1 of their 1992 return as follows: "Other Income. COD INCOME FINLEY, KUMBLE ET AL 2,000". Other than this $2,000 reported on the face of the return, petitioners did not account therein for Mr. Blonien's distributive share of items from Finley Kumble or his negative capital account or include any

reference to Finley Kumble on Schedule E of the 1992 return. Petitioners did not file Form 8082 with respect to Finley Kumble with their 1992 return or otherwise notify the Internal Revenue Service that they were claiming that Mr. Blonien was not a partner in Finley Kumble.

Petitioners' 1992 return was prepared by their accountant, Andrew Lundholm. Mr. Blonien did not know why he reported $2,000 of COD income of Finley Kumble, rather than the amount shown on the Schedule K-1 from Finley Kumble.

Petitioners did report on Schedule E of their 1992 return Mr. Blonien's share of partnership income from Whitman & Ransom. Petitioners did include with their 1992 return Form 8082 with respect to Whitman & Ransom. Petitioners indicated thereon that the amount shown on "Line 5 Guaranteed Payments to Partner" and "Line 15a Net Earnings (loss) from self-employment" of the Schedule K-1 received from Whitman & Ransom exceeded the amount being reported by them on Schedule E, with the following explanation: "Line 10 & 11 - Partnership reported items on an accrual basis although it is a cash tax reporter Amount reported on this return are [sic] amounts actually received."

Petitioners' accountant, Mr. Lundholm, sent a letter to respondent dated July 21, 1995, requesting respondent to abate late-filing penalties assessed for 1990, 1991, and 1992. In the letter, Mr. Lundholm stated:

The extensions were necessary as all the data needed to file a complete and accurate return was not available at the time of the original due dates. In particular a New York based law partnership, (Finley, Kumble and Wagner--13-1694664) <u>in which Mr. Blonien was a partner</u>. This particular partnership filed for bankruptcy in 1988 and has been in audit by the Internal Revenue Service for years. Mr. Blonien has been involved with the various lawsuits and audits from 1988 to the present, (last correspondence from the service regarding this partnership is dated December 22, 1994). This partnership alone made it impossible to file his returns without additional time allowed by the extensions. [Emphasis added.]

On May 10, 1996, respondent appointed Marshall Manley to be the tax matters partner (TMP) for Finley Kumble because he was the Finley Kumble partner with the largest partnership share. On June 20, 1996, Marshall Manley, as TMP of Finley Kumble, signed a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, by which the period to assess the Finley Kumble partners for partnership items for the calendar year 1992 was extended to December 31, 1997. On May 29, 1997, Mr. Manley, as TMP of Finley Kumble, signed a second Form 872-P, extending the assessment period to December 31, 1998. Petitioners were aware that respondent was examining Finley Kumble's partnership returns.

On August 10, 1998, respondent issued a notice of final partnership administrative adjustment (FPAA) for Finley Kumble to Marshall Manley, TMP, for the calendar year 1992. No petition was timely filed with respect to the FPAA.

- 14 -

On December 17, 1999, respondent sent petitioners an affected items notice of deficiency, determining a deficiency of $11,826 for the year ended 1992; the basis for the deficiency was Mr. Blonien's distributive share of Finley Kumble's COD income in the amount of $36,332[4] and a phaseout of itemized deductions under section 68 of $1,817 resulting from the additional Finley Kumble income.[5]  This amount of COD income is $880 less than Mr. Blonien's distributive share of Finley Kumble's COD income shown on the Schedule K-1 that Mr. Blonien received from Finley Kumble. It appears that, in issuing the notice, respondent did not give petitioners credit for the $2,000 of Finley Kumble COD income reported on page 1 of their 1992 return.  It does not appear that respondent made adjustments to petitioners' tax liability for the other items reported to Mr. Blonien on the Finley Kumble Schedule K-1 and in the FPAA.

---

[4]Presumably, respondent used the "affected items" procedure to enable Mr. Blonien and other Finley Kumble partners to claim that they need not recognize their respective shares of Finley Kumble's COD income, to the extent of their own insolvency. Sec. 108(a)(1)(B), (d)(6); see Overstreet v. Commissioner, T.C. Memo. 2001-13, affd. in part and dismissed in part 33 Fed. Appx. 349 (9th Cir. 2002).  Petitioners did not claim in their petition that they were insolvent.

[5]In issuing the notice, respondent did not respond to the invitation in sec. 6222(d) to determine an accuracy-related penalty against petitioners under sec. 6662(a) for taking a position on their individual return inconsistent with the position taken by Finley Kumble on its partnership return without filing Form 8082 or otherwise explaining the basis for the inconsistency.

OPINION

### We Lack Jurisdiction To Consider Petitioners' Argument That Mr. Blonien Was Not a Partner

Petitioners argue that Mr. Blonien never became a partner in Finley Kumble.  They therefore contend that the period of limitations under section 6229 for respondent to assess a deficiency relating to partnership items does not apply to them.  Petitioners further contend that the period of limitations for assessing a deficiency relating to nonpartnership items (section 6501) has expired.

Respondent argues that we lack jurisdiction in this proceeding to consider petitioners' argument that Mr. Blonien was not a partner in Finley Kumble.  We agree with respondent.

"When a jurisdictional issue is raised, as well as a statute of limitations issue, we must first decide whether we have jurisdiction in the case before considering the statute of limitations defense."  Saso v. Commissioner, 93 T.C. 730, 734-735 (1989) (citing King v. Commissioner, 88 T.C. 1042, 1050 (1987), affd. on other grounds 857 F.2d 676 (9th Cir. 1988)).

Our jurisdiction cannot depend on the merits of petitioners' allegations.  Jurisdiction represents the power to hear a claim and decide its merits.  As the Supreme Court recently stated: "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that

of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Envt., 523 U.S. 83, 94 (1998). We cannot avoid the jurisdictional issue by assuming hypothetical jurisdiction and disposing of the case on the merits. Id.

In support of his jurisdictional argument, respondent points out that section 6221 requires "partnership items" to be determined at the partnership level. Under section 6231(a)(3), "partnership items" are those items that, by regulation, are more appropriately determined at the partnership level than at the partner level. The regulations contain a nonexclusive list of items more appropriately determined at the partnership level. Sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs. The list includes the amount of, and each partner's distributive share of, partnership items of income, gain, loss, deduction, or credit, id., and any contributions, distributions, or transactions subject to section 707(a) that are necessary to determine the amount, character, or percentage interest of a partner in the partnership, sec. 301.6231(a)(3)-1(a)(4), Proced. & Admin. Regs.

In order to determine each partner's distributive share of partnership items, it is necessary to know who are the partners and what share of partnership items each partner is entitled to and required to take into account. Therefore, to the extent that the taxpayer's claim that he was not a partner would affect the distributive shares of the other partners, the taxpayer's claim

is a partnership item.[6]  We have no jurisdiction to consider
partnership items in a partner-level deficiency proceeding.  GAF
Corp. v. Commissioner, 114 T.C. 519 (2000); Maxwell v.
Commissioner, 87 T.C. 783 (1986).  Therefore, we are bound by the
determination made at the partnership level that Mr. Blonien was
a partner in Finley Kumble.

Petitioners Have Not Been Deprived of Due Process

Petitioners argue that treating their allegation that Mr.
Blonien was not a partner as a "partnership item", over which we
have no jurisdiction in this partner-level deficiency proceeding,

---

[6]We recognize that the determination of who is a partner can
be a partner-level item where resolution of the issue would not
affect the allocation of partnership items to the other partners.
In Katz v. Commissioner, 116 T.C. 5 (2001), we held that
allocation of a partnership distributive share between a partner
and the partner's bankruptcy estate was properly a partner-level
item because the outcome of the dispute did not affect the
allocation of partnership items among the other partners.
Similarly, in Hang v. Commissioner, 95 T.C. 74 (1990), we held
that the determination whether a father was equitable owner of S
corporation shares held in the name of his sons is properly made
at the individual shareholder level rather than at the corporate
level in a TEFRA proceeding because the determination would not
affect the distributive shares of the other shareholders.

In the case at hand, if petitioners were successful in
arguing that Mr. Blonien was not a partner in Finley Kumble, then
the share of Finley Kumble's COD income wrongly allocated to Mr.
Blonien would have to be reallocated among the other partners.
Because the Finley Kumble partnership-level proceeding is
completed, there may be no way to make the reallocations.
Therefore, unlike the situation in Hang and Katz where resolution
of the dispute would not affect the original partnership
allocations, resolution of the dispute could affect the
partnership allocations to the other partners.  Therefore, the
determination of whether Mr. Blonien was a partner in Finley
Kumble is more appropriately determined at the partnership level.

would deprive Mr. Blonien of due process and violate their constitutional rights.  Mr. Blonien observes that he had an inherent conflict of interest with the Finley Kumble trustee and Mr. Manley, the TMP, on this question.  The trustee had an interest in enlarging the group of persons against whom claims for contribution to satisfy the claims of creditors could be pursued.  Mr. Manley, as the partner with the largest percentage interest in the firm, had an interest in enlarging the group of persons to whom the COD income would be allocated in order to reduce his own share of the COD income.  Yet, as Mr. Blonien observes, he had no right to participate in the partnership-level proceeding to dispute his partner status.[7]

Under the partnership unified audit and litigation procedures enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, codified at sections 6221 through 6233, if a partnership has more than 100 partners and a putative partner has less than a 1-percent interest in the profits of the partnership, the Commissioner generally need not give notice of a partnership audit or proceeding to the putative partner, and the putative partner has no standing to challenge the FPAA.  Secs. 6223(b),

---

[7]If a readjustment petition had been filed in the Tax Court by the TMP, a notice partner, or a 5-percent group, see infra note 8, there might have been an interesting question whether Mr. Blonien should be entitled under sec. 6226(c) to participate in the proceeding to present his claim that he was not a partner.

6226(b); <u>Energy Res., Ltd. v. Commissioner</u>, 91 T.C. 913 (1988).[8]
These TEFRA provisions normally satisfy the requirements of due
process because the tax matters partner, who receives notice and
has the right to petition the Tax Court to reconsider the FPAA,
acts as the agent for the other partners.  <u>Kaplan v. United
States</u>, 133 F.3d 469, 475 (7th Cir. 1998); <u>Walthall v. United
States</u>, 131 F.3d 1289, 1295 (9th Cir. 1997).  However,
petitioners contend that this agency rationale does not apply to
persons who were not partners in the partnership and did not
otherwise agree to be bound by partnership-level determinations.
Nor, petitioners contend, citing <u>Transpac Drilling Venture 1982-
12 v. Commissioner</u>, 147 F.3d 221, 225 (2d Cir. 1998), revg. and
remanding T.C. Memo. 1994-26, does it apply to situations in
which the TMP has an inherent conflict of interest with the
putative partner on the question at issue, inasmuch as the agency
rationale is based on the notion that partners owe fiduciary
duties (including the duty of loyalty) to each other.  See
<u>Meinhard v. Salmon</u>, 164 N.E. 545 (N.Y. 1928).

Whatever the merits of petitioners' due process challenge,
there are two reasons they have no standing to raise it in this

---

[8]It does not appear that partners with less than 1-percent
interests in Finley Kumble banded together to constitute
themselves a 5-percent group entitled, under sec. 6223(b)(2), to
notice of and participation in the administrative proceeding at
the partnership level and, under sec. 6226(b)(1), to file a
petition to the Tax Court in response to the FPAA.

proceeding.  First, petitioners are estopped by the duty of consistency from claiming that Mr. Blonien was not a partner in Finley Kumble for Federal income tax purposes.  Because of Finley Kumble's poor financial performance, petitioners reported as income on their 1987 Federal income tax return far less than the amount of money Mr. Blonien actually received from Finley Kumble. Mr. Blonien received more than $64,000 in draws from Finley Kumble in 1987.  See supra note 3.  Petitioners reported Mr. Blonien's distributive share of Finley Kumble's partnership income on Schedule E as only $15,310.  In addition, petitioners reported and claimed a partnership loss from Finley Kumble of $106 for the year 1988, a year for which he also reported substantial partnership income from Whitman & Ransom.

After receiving tax benefits by taking the position on their Federal income tax returns that Mr. Blonien was a partner in Finley Kumble in prior years, petitioners attempt to avoid recognizing Mr. Blonien's share of Finley Kumble's COD income by contending for 1992 that Mr. Blonien was merely an employee of Finley Kumble.  Petitioners want the benefits of Mr. Blonien's being a partner in earlier years without subjecting themselves to the burdens of his being a partner in the later year at issue. As Justice Brandeis stated in his seminal concurring opinion in Ashwander v. TVA, 297 U.S. 288, 348 (1936):  "The Court will not pass upon the constitutionality of a statute at the instance of

one who has availed himself of its benefits."  Accord <u>Arnett v. Kennedy</u>, 416 U.S. 134, 153 (1974) ("It is an elementary rule of constitutional law that one may not 'retain the benefits of an Act while attacking the constitutionality of one of its important conditions'." (quoting <u>United States v. San Francisco</u>, 310 U.S. 16, 29 (1940))).

The duty of consistency prevents petitioners from claiming on their income tax returns that Mr. Blonien was a partner and then asserting, following the TEFRA partnership proceeding, that the statute of limitations bars assessment of the deficiency because Mr. Blonien never became a partner after all.  As we explained in <u>Hollen v. Commissioner</u>, T.C. Memo. 2000-99, affd. 25 Fed. Appx. 484 (8th Cir. 2002):

> The "duty of consistency", sometimes referred to as quasi-estoppel, is an equitable doctrine that Federal courts historically have applied in appropriate cases to prevent unfair tax gamesmanship.  The duty of consistency doctrine "is based on the theory that the taxpayer owes the Commissioner the duty to be consistent in the tax treatment of items and will not be permitted to benefit from the taxpayer's own prior error or omission."  It prevents a taxpayer from taking one position on one tax return and a contrary position on a subsequent return after the limitations period has run for the earlier year.  If the duty of consistency applies, a taxpayer who is gaining Federal tax benefits on the basis of a representation is estopped from taking a contrary return position in order to avoid taxes.  [Citations omitted.]

If Mr. Blonien was not a partner in Finley Kumble, then petitioners misrepresented the facts to respondent in their earlier Federal income tax returns.  Respondent relied on the

misrepresentation in pursuing the partnership-level proceeding and forgoing an individual proceeding against Mr. Blonien within the period of limitations on assessment under section 6501(a). Petitioners first notified respondent of their position that Mr. Blonien was not a partner after the period of limitations had expired for the assessment of a deficiency on the full amount of wage income that would have been taxable to petitioners if Mr. Blonien had been an employee of Finley Kumble rather than a partner. These are the elements for equitable estoppel under the duty of consistency.[9] Under the duty of consistency, petitioners are bound by the facts asserted in their returns--that Mr. Blonien was a partner in Finley Kumble for Federal income tax purposes.

Second, petitioners have no standing to raise a due process challenge because they received a partnership Schedule K-1 from Finley Kumble for 1992 and failed to file a Form 8082 or otherwise notify respondent that they were taking a position

---

[9]We have previously adopted the elements for the duty of consistency from the decision in Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974): "(1) the taxpayer has made a representation or reported an item for tax purposes in one year, (2) the Commissioner has acquiesced in or relied on that fact for that year, and (3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial tax year." See, e.g., Estate of Letts v. Commissioner, 109 T.C. 290, 297 (1997), affd. without published opinion 212 F.3d 600 (11th Cir. 2000); Hollen v. Commissioner, T.C. Memo. 2000-99, affd. 25 Fed. Appx. 484 (8th Cir. 2002).

(that Mr. Blonien was not a partner) that was inconsistent with the position taken by the partnership on the Schedule K-1 (that Mr. Blonien was a partner).

The TEFRA provisions incorporate the duty of consistency, requiring partners on their individual returns to follow the return filed by the partnership. Section 6222(a) provides: "A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return." If a partner believes that the partnership's treatment of an item is erroneous, the partner may elect out of the duty of consistency by treating the item inconsistently with the partnership's treatment and filing "with the Secretary a statement identifying the inconsistency." Sec. 6222(b)(1)(B). Section 301.6222(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6782 (Mar. 5, 1987), provides that "the statement identifying an inconsistency described in section 6222(b)(1)(B) shall be filed by filing the form prescribed for that purpose in accordance with the instructions accompanying that form." The instructions to Form 8082 at all relevant times required the filing of Form 8082 if "you believe an item was not properly reported on the Schedule K-1 * * * you received from the partnership".

Petitioners were aware of the requirement to file Form 8082 in 1992; they filed Form 8082 with their 1992 return to take a

position with respect to Mr. Blonien's share of items from Whitman & Ransom that was inconsistent with Whitman & Ransom's return.

If a partner takes a position on his return inconsistent with the partnership's position on its return and properly files a Form 8082 calling attention to the inconsistency, the Commissioner has the option of (1) converting all partnership items arising from that partnership into nonpartnership items and resolving them at the partner level by so notifying the partner under section 6231(b)(1)(A), or (2) determining the items at the partnership level while allowing the inconsistent treatment pending the conclusion of the partnership-level proceedings. Sec. 301.6222(b)-2T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6782 (Mar. 5, 1987).

A partner who receives a Schedule K-1 and fails to notify the Commissioner of inconsistent treatment by filing a Form 8082 is bound by the partnership's position on its return. The Commissioner may make a computational adjustment (without following the deficiency procedures) to make the partner's return consistent with the partnership's return. Sec. 6222(c); sec. 301.6222(b)-2T(a), Temporary Proced. & Admin. Regs., supra.

On no return that is part of the record in this case did petitioners notify respondent that Mr. Blonien was not a partner. Petitioners led respondent to believe that Mr. Blonien was a

partner in Finley Kumble, and that the appropriate way to collect additional amounts that might be owed by the Finley Kumble partners was to determine the partnership items in a partnership-level proceeding. See sec. 6221 ("the tax treatment of any partnership item * * * shall be determined at the partnership level" (Emphasis added.)). Had petitioners properly notified respondent at the time they filed their 1992 return of their position that Mr. Blonien was not a partner in Finley Kumble, respondent could have converted the issue to a partner-level item under section 6231(b)(1)(A) or could have addressed the issue, on notice to petitioners, in a partnership-level proceeding under section 301.6222(b)-2T(a), Temporary Proced. & Admin. Regs., supra, all within the period of limitations. By failing to file a Form 8082 after receiving a Schedule K-1 from Finley Kumble, petitioners accepted the position stated on the Schedule K-1 Mr. Blonien received (that Mr. Blonien was a partner in Finley Kumble), deprived respondent of an opportunity to address the issue before the expiration of the period of limitations, and thereby waived the right to take an inconsistent position on their return.

It was petitioners' conduct in claiming on prior returns that Mr. Blonien was a partner, and in failing to notify respondent timely of their position that Mr. Blonien was not a partner, that deprived Mr. Blonien of the opportunity to have the

issue disposed of in a way that would have allowed him to participate in the determination. Therefore, petitioners have no standing to assert that they have been deprived of due process on the grounds they did not have a prior opportunity to dispute Mr. Blonien's partnership status.

We Also Lack Jurisdiction To Consider Petitioners' Argument That the Issuance of the FPAA Was Not Timely

In their petition to this Court, petitioners also challenged the timeliness of the FPAA, arguing that the TMP's extensions of the period of limitations were invalid. After petitioners filed their petition, we issued our decision in Overstreet v. Commissioner, T.C. Memo. 2001-13, affd. in part and dismissed in part 33 Fed. Appx. 349 (9th Cir. 2002), in which we held that a Finley Kumble partner did not have standing in a partner-level proceeding to challenge the timeliness of the FPAA. We held that expiration of the period of limitations for issuance of the FPAA is an affirmative defense that must be raised in a partnership-level proceeding.

At trial, petitioners and respondent stipulated to be bound by the final decision in the Overstreet case. Our decision in Overstreet is now final, as a result of dismissal of the taxpayer's untimely appeal by the Court of Appeals for the Ninth Circuit. See 33 Fed. Appx. 349 (9th Cir. 2002). On the basis of the parties' stipulation in the case at hand, petitioners cannot challenge in this proceeding the validity and timeliness of the

Finley Kumble FPAA issued on August 10, 1998, or the extensions of the period of limitations granted by Mr. Manley as TMP of Finley Kumble.

We Have Jurisdiction To Determine How Mr. Blonien's Share of Finley Kumble's Partnership Items Will Affect Petitioners' Income Tax Liability

While we lack jurisdiction in this proceeding to consider petitioners' argument that Mr. Blonien was not a partner or to review the allocation to Mr. Blonien of shares of partnership items, we have jurisdiction to consider whether assessment of a deficiency against petitioners is barred by the statute of limitations, and whether respondent correctly determined petitioners' tax liability on the basis of the allocation made to Mr. Blonien at the partnership level.

Under TEFRA, after the allocation to the partners of partnership items is determined at the partnership level, the partners' individual tax liabilities must be determined. This is done by way of "computational adjustments" and "affected items", two terms of art under TEFRA. According to section 6231(a)(5) and (6):

> The term "affected item" means any item to the extent such item is affected by a partnership item.

> The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. * * *

In GAF Corp. v. Commissioner, 114 T.C. at 523, we stated:

If a computational adjustment results in a deficiency in a partner's tax, the partner is accorded the right to challenge the adjustment pursuant to the deficiency procedures provided for in subtitle F, chapter 63, subchapter B of the Internal Revenue Code only if and to the extent the change in the partner's tax liability cannot be made without making one or more partner-level determinations. See sec. 6230(a)(1); sec. 301.6231(a)(6)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).

Therefore, we have jurisdiction in this proceeding to determine the effect of the Finley Kumble partnership-level allocations on petitioners' tax liability to the extent the change in petitioners' tax liability resulting from the partnership-level allocations requires partner-level determinations.

Determining whether the assessment of the deficiency is timely under the applicable statute of limitations requires a partner-level determination of the timeliness of respondent's assessment with respect to each partner in the partnership. Similarly, determining whether respondent gave petitioners credit for the income recognized on their return in computing their deficiency and determining the effect of the additional Finley Kumble income on the phaseout of itemized deductions under section 68(a)[10] may require partner-level determinations. We

---

[10]Because the phaseout of itemized deductions under sec. 68(a) is computational and does not require any special partner-level factual determinations, it appears that respondent could have assessed the affected item adjustment as computational without following the deficiency procedures of ch. 63, subch. B of the Internal Revenue Code. See sec. 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, (continued...)

have jurisdiction in this proceeding to review these partner-level determinations.  Before considering the merits of petitioners' claims, we consider petitioners' evidentiary objections.

Petitioners' Evidentiary Objections

Petitioners object to the admissibility of Exhibit 3-J (Finley Kumble's partnership return for 1992) and Exhibit 4-J (Finley Kumble Schedule K-1 for Mr. Blonien for 1992) on the ground that respondent failed to authenticate the documents under rule 901 of the Federal Rules of Evidence and on the ground that the documents are inadmissible hearsay under rule 802 of the Federal Rules of Evidence.

Respondent submitted a certification that the partnership return is an authentic copy of the document filed with respondent by Finley Kumble.  The copy of the document is incomplete because it does not include the Schedules K-1 for all 280 partners. Petitioners argue that the entire document is inadmissible because the copy is incomplete.

---

[10](...continued)
1987).  On the other hand, in certain circumstances, the computational adjustment for passed-through discharge of indebtedness income could require a partner-level solvency determination.  See sec. 108(a)(1)(B), (d)(6).  In the case at hand, respondent followed the deficiency procedures of ch. 63, subch. B, of the Internal Revenue Code in connection with both the affected item and the computational adjustment.

Parties do not need to introduce complete versions of documents. Under rule 106 of the Federal Rules of Evidence, the adverse party "may require the introduction at that time of any other part * * * which ought in fairness to be considered contemporaneously with it." Petitioners did not require the introduction of the missing 279 Schedules K-1 or show that the missing Schedules K-1 ought in fairness be considered with the remainder of the partnership return.

Petitioners argue that the Schedule K-1 for Mr. Blonien should not be admitted because respondent did not include "the partner letter originally attached to the Schedule K-1". Respondent has confirmed that the Schedule K-1 filed with the return did not include a partner letter. Petitioners have failed to establish that the partner letter ought in fairness to be considered with the Schedule K-1; petitioners' authentication objections are denied.

Petitioners also argue that these exhibits should not be admitted because they are hearsay--offered to prove that Mr. Blonien was a partner in Finley Kumble. Respondent responds that these documents are not offered to show that Mr. Blonien was a partner in Finley Kumble. The documents are offered to show that Finley Kumble purported to be a partnership that would be subject to the TEFRA proceedings and to show Finley Kumble's state of mind--that Finley Kumble treated Mr. Blonien as a partner. The

documents are not offered to establish and do not establish that Mr. Blonien was a partner in Finley Kumble.  The documents are admitted for the purposes offered.

Exhibits 5-J through 9-J consist of documents relevant to establishing the issuance and timeliness of the FPAA issued to Finley Kumble.  At trial, the parties stipulated to be bound by the final decision in Overstreet v. Commissioner, T.C. Memo. 2001-13, in which this Court determined that the expiration of the period of limitations for issuance of the FPAA issued to Finley Kumble is an affirmative defense that must be raised in a partnership-level proceeding.  Because the taxpayers in Overstreet did not timely file an appeal from the Tax Court's decision, the Tax Court's decision is now final and binding on the parties in the case at hand under the terms of their stipulation.  The parties agree that Exhibits 5-J through 9-J are relevant only if petitioners can challenge the timeliness of the FPAA in this proceeding.  On the basis of the parties' stipulation to be bound by the final decision in Overstreet, we hold that petitioners cannot challenge the timeliness of the FPAA in this proceeding.  Therefore, Exhibits 5-J through 9-J are not relevant.

Petitioners argued in their opening brief that Exhibit 10-J, a computational adjustment report, is irrelevant.  Respondent pointed out that the exhibit may be necessary to compute the Rule

155 calculation under certain circumstances. Petitioners in their reply brief did not dispute respondent's contention. Therefore, Exhibit 10-J has been admitted into evidence for that purpose.

Exhibits 16-J and 19-J are documents reflecting the settlement agreement between Mr. Blonien and the trustee of Finley Kumble's bankruptcy estate regarding Mr. Blonien's agreement to make payments as part of Finley Kumble's reorganization plan. The settlement document refers to Mr. Blonien as a "partner".

Petitioners argue that the documents are not admissible under rule 408 of the Federal Rules of Evidence because the statements were made in settlement of a dispute. We do not agree with petitioners. Rule 408 only bars the admissibility of evidence to "prove liability for * * * the claim or its amount." Mr. Blonien's settlement is not offered in this proceeding to prove liability for or the amount of the bankruptcy trustee's claim against Mr. Blonien. See Bituminous Constr., Inc. v. Rucker Enters., Inc., 816 F.2d 965 (4th Cir. 1987) (letters containing settlement offers were properly admitted to show the defendant's understanding of its obligations under a joint-check agreement). The settlement agreement is being offered for the purpose of impeaching Mr. Blonien's credibility and establishing

that he agreed to be treated as a partner of Finley Kumble, at least for certain purposes.

However, because we lack jurisdiction to consider petitioners' contention that Mr. Blonien was not a partner in Finley Kumble, the document is not relevant to the resolution of any issue in dispute in this case.

Finally, petitioners argue that Exhibit 17-J, a letter from petitioners' accountant to respondent, should not be admitted. In the letter, petitioners' accountant requested an abatement of late-filing penalties. In support of the request, petitioners' accountant stated that abatement is appropriate because Mr. Blonien was a partner in Finley Kumble, and Finley Kumble had not provided information to petitioners in time to enable them to timely file their Federal income tax returns. Petitioners argue that these statements were not excepted from hearsay by rule 801(d)(2)(C) of the Federal Rules of Evidence (statements by authorized agents of a party) because respondent failed to show that the accountant was authorized by petitioners to make the statements.

We need not consider these issues because the letter is irrelevant to any issue in dispute in this case. We have no jurisdiction to consider petitioners' argument that Mr. Blonien was not a partner in Finley Kumble. Therefore the letter will not be admitted in evidence.

Period of Limitations on Assessment of Deficiency

Petitioners contend that the 3-year period of limitations set forth in section 6501 bars respondent from assessing the deficiency in the case at hand. Section 6501(a) provides "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." Except in certain specified circumstances not relevant to the case at hand, the Commissioner must, before assessing a deficiency, mail the taxpayer a notice of deficiency in accordance with section 6212. Sec. 6213(a). Section 6503(a)(1) provides:

> The running of the period of limitations provided in section 6501 * * * on the making of assessments * * * in respect of any deficiency * * * shall * * * be suspended for the period during which the Secretary is prohibited from making the assessment * * * (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

The Secretary is prohibited from assessing the deficiency during the 90-day period following mailing of a notice of deficiency prepared under section 6212, and, if a petition is filed with the Tax Court, until the decision of the Tax Court has become final. Sec. 6213(a). Therefore, unless another provision extends the period for assessment contained in section 6501(a), the Commissioner must mail the notice of deficiency to the taxpayer

within 3 years following the filing of the taxpayer's income tax return in order to be able to assess the deficiency timely.

In the case at hand, respondent did not mail the notice of deficiency within 3 years following the filing of petitioners' 1992 Federal income tax return.  Petitioners filed their 1992 Federal income tax return on October 15, 1993, and the notice of deficiency was not mailed until December 17, 1999, more than 6 years later.  Therefore, unless the period for assessment is otherwise extended or subject to a different period of limitations, respondent would be barred by section 6501(a) from assessing the deficiency.

Respondent argues that the period for assessment of the deficiency is subject to the alternative period of limitations contained in section 6229, which is part of the unified audit and litigation procedures for partnerships enacted by TEFRA.

In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 539-540 (2000), we explained the history and purpose of the uniform partnership procedures enacted by TEFRA:

> For income tax purposes, partnerships are not taxable entities. * * * Any income tax attributable to partnership items is assessed at the partner level. Thus, any statute of limitations provisions that limit the time period within which assessment can be made are restrictions on the assessment of a partner's tax.
>
> Before TEFRA, adjustments with respect to partnership items were made to each partner's income tax return at the time (and if) that return was

examined. * * * The tax-writing committees explained the TEFRA partnership provisions as follows:  "[T]he tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners."

In Greenberg Bros. Pship. #4 v. Commissioner, 111 T.C. 198, 201 (1998), we explained that "The principal purpose behind TEFRA is to provide consistency and reduce duplication in the treatment of 'partnership items' by requiring that they be determined in a unified proceeding at the partnership level."

In order to achieve the goal of having partnership items (which ultimately affect each partner's tax liability) determined in a single proceeding at the partnership level, Congress enacted section 6229, which extends the period of limitations applicable to assessment of deficiencies against the individual partners relating to the adjustment of partnership items:

SEC. 6229(a).  General Rule.--Except as otherwise provided in this section, the period for assessing any tax * * * which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of--

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions.

The limitations period can be extended for a particular partner by agreement with that partner, or for all partners by the tax matters partner.  Sec. 6229(b)(1).  The period is suspended

following the mailing to the tax matters partner of an FPAA during the period under section 6226 for partners to challenge the adjustment (150 days), and for 1 year thereafter.  Sec. 6229(d).  Thus, section 6229(d) extends "the time for respondent to issue the notice of deficiency until 1 year and 150 days after the issuance of the FPAA."  Overstreet v. Commissioner, T.C. Memo. 2001-13.

The "affected items" notice of deficiency was mailed to petitioners on December 17, 1999--within 1 year and 150 days after the issuance of the FPAA on August 10, 1998.  Therefore, if section 6229(d) applies to the items set forth in the notice of deficiency mailed to petitioners, an assessment thereon would not be barred by the statute of limitations.

Section 6229(d) applies to the case at hand because Mr. Blonien was determined to be a partner in Finley Kumble at the partnership level.  We have no jurisdiction in this partner-level proceeding to consider petitioners' argument that the partnership-level determination was wrong.  We are bound by the determination made at the partnership level that Mr. Blonien was a partner in Finley Kumble for Federal income tax purposes. Therefore, respondent is not barred from assessing petitioners a deficiency arising from Mr. Blonien's share of Finley Kumble's items.

Rule 155 Computation

Respondent stated on brief: "If respondent prevails, this case may require a Rule 155 computation." We agree that a Rule 155 computation is appropriate. Respondent did not allow petitioners credit for the $2,000 of Finley Kumble COD income that they reported on their 1992 return. Respondent also indicated on brief that Exhibit 10-J may have a bearing on the appropriate adjustments if a Rule 155 computation is required; other items and amounts determined at the partnership level to be allocated to Mr. Blonien are not clearly set forth in the FPAA and the deficiency notice. The parties should address and resolve these issues in the Rule 155 computation.

To reflect our holdings herein,

Decision will be entered under Rule 155.