T.C. Memo. 2003-308

UNITED STATES TAX COURT

RODNEY J. BLONIEN AND NOREEN E. BLONIEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 2660-00.                    Filed November 7, 2003.

<u>R. Todd Luoma</u>, for petitioners.

<u>Kathryn K. Vetter</u> and <u>Neal O. Abreu</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  This case has remained before us because

petitioners have objected to respondent's computations for

_____

[*]This Supplemental Opinion supplements <u>Blonien v.
Commissioner</u>, 118 T.C. 541 (2002).

entry of decision under Rule 155[1] pursuant to our opinion in
Blonien v. Commissioner, 118 T.C. 541 (2002).  In that opinion,
we sustained respondent's determination that petitioners had a
deficiency in 1992 Federal income tax as a result of the
allocation to Mr. Blonien (petitioner), in a partnership-level
proceeding under TEFRA,[2] of a distributive share of cancellation
of debt (COD) income of the bankrupt law firm of Finley, Kumble,
Wagner, Heine, Underberg, Manley, Myerson & Casey (Finley
Kumble).

The remaining issues are:  (1) Whether respondent used the
proper method to allocate COD income of Finley Kumble to
petitioner, and (2) whether proper adjustments to reduce
petitioner's taxable income were omitted from respondent's Rule
155 computations.  We shall enter decision in accordance with
respondent's computations.

Background

In Blonien v. Commissioner, supra, petitioners argued that
petitioner never became a partner of Finley Kumble, that the
period of limitations under section 6229 to assess a deficiency

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue.

[2]See the partnership unified audit and litigation procedures enacted by the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, codified at secs. 6221 through 6233.

relating to partnership items did not apply to him, and that the statutory period of limitations on assessing nonpartnership items had expired.

We held the Court lacks jurisdiction to determine whether petitioner was not a partner because the Commissioner's determination of partnership items can be challenged under TEFRA only in a partnership-level proceeding.[3] We held petitioner lacks standing to challenge on due process grounds the partnership-level determination that he was a partner in Finley Kumble. This was particularly true for at least two reasons: First, on prior years' returns, petitioner had claimed he was a partner and the tax benefits derived therefrom; and, second, for 1992, the tax year in issue, he had received a Schedule K-1 (Form 1065), Partner's Share of Income, Credits, Deductions, Etc., that he failed to take issue with by notifying respondent that he was not a partner by filing Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request. See Blonien v. Commissioner, supra at 552-557. Therefore, the period of limitations under section 6229 for the IRS to assess the

---

[3]One might wonder how this case ever came to the Court, inasmuch as all the issues have been resolved on the ground of lack of jurisdiction. In our opinion in Blonien v. Commissioner, supra at 550 n.4, we speculated that respondent might have used the "affected items" procedure to enable petitioner (and other Finley Kumble partners) to claim that he need not recognize his share of Finley Kumble's COD income to the extent of his own insolvency. See sec. 108(a)(1)(B). We observed that petitioner did not claim in his petition that he was insolvent.

deficiency did not expire before the affected item deficiency notice was issued. Id. at 557. We concluded that a Rule 155 computation was needed to consider whether a $2,000 credit petitioners are entitled to for their inclusion of $2,000 of COD income reported on their 1992 income tax return (the $2,000 credit) and other items reported on petitioner's 1992 Schedule K-1 received from Finley Kumble had properly been given effect in computing the deficiency. Id. at 558-559, 564.

As part of respondent's Rule 155 computation, Form 5278, Statement-Income Tax Change, states petitioner's "Adjustment to Income" for partnership items of Finley Kumble as "Finley Other Income" of $34,332. Respondent's Form 4549-CG, Income Tax Examination Changes, attached to the statutory notice of deficiency, recited "Finley Other Income $36,332." Respondent's computation has given proper effect to the $2,000 of COD income reported on petitioners' 1992 return.

The first page of Finley Kumble's 1992 Form 1065, U.S. Partnership Return of Income, at line 7, Other income (loss), referenced "SEE STATEMENT 1", which was a Form 8275, Disclosure Statement, containing an Item 2 "CANCELLATION OF INDEBTEDNESS $55,777,452". Petitioner's 1992 Schedule K-1 indicated he had a 0.0170-percent interest in Finley Kumble's profits and losses, and a 0.0345-percent interest in capital. The Schedule K-1 also indicated that petitioner had a yearend negative capital account.

Petitioners' Federal income tax return for 1987, the only year petitioner did legal work for Finley Kumble clients, reported a distributive share of partnership income that was substantially exceeded by the partnership draws he actually received from Finley Kumble during that year. Finley Kumble announced its dissolution late in 1987 and was declared bankrupt early the next year without petitioner's having made any capital contribution to the firm.

Respondent has explained that under the closing agreement between the IRS and the Finley Kumble bankruptcy trustee that concluded the Finley Kumble partnership-level TEFRA proceeding, COD income was allocated to petitioner and all other partners using a two-step process. After taking into account the capital contribution of $15,000 that petitioner was required to make in the Finley Kumble bankruptcy proceeding, over 10 years, with interest at 10 percent, including the present value of the future interest payments on the deferred installments thereof, petitioner still had a negative capital account of $26,099. In the first step of the COD income allocation, petitioner was allocated $26,099 of COD income to reduce his negative capital account to zero. Finley Kumble's remaining COD income, after accounting for step-one COD income allocations to petitioner and other partners with negative capital accounts, was $26,580,484. In the second step, Finley Kumble allocated the remaining COD

income among the partners in proportion to their contributions to the partnership under the bankruptcy plan. The total contribution by all partners was $38,962,594. Petitioner's second COD income allocation of $10,233 was calculated by dividing his $15,000 contribution by the total of all partner contributions, $38,962,594, and then multiplying the result by the remaining COD income, $26,580,484 (15,000/38,962,594 = .03849 percent x $26,580,484).[4]

In order to explain fully the two-step process, respondent attached to his response to petitioners' objection to his computation a spreadsheet titled "IRS Closing Agreement" that reflects the computation of the COD income allocation to petitioner using the two-step process described above. Neither party introduced the closing agreement or the spreadsheet into evidence during the trial of the case.

The following adjustments (the adjustment items) to petitioners' income listed on respondent's Form 4549A-CG, Income Tax Examination Changes, reduce petitioners' taxable income by $1,199: (1) Capital loss of $18, (2) Finley Kumble interest

---

[4]The computation shows the second allocation amount is $10,231, which is $2 less than the $10,233 allocation claimed by respondent. The discrepancy could be caused by mistakes in amounts recited in respondent's response. This computational discrepancy is minimal and harmless and does not change our decision.

income of $127, (3) Finley Kumble ordinary loss of $1,251, and (4) itemized deductions of $57.

Discussion

Petitioners and respondent provide the following alternative computations of petitioners' additional taxable income:

|  | Petitioners' Computation<br>Additional Taxable Income | Respondent's Computation<br>Additional Taxable Income |
| --- | --- | --- |
| COD income | $9,482.17 | $36,332 |
| $2,000 credit | (2,000.00) | (2,000) |
| Finley Kumble<br>  interest income | 127.00 | Already accounted for |
| Capital loss | (18.00) | Already accounted for |
| Finley Kumble<br>  ordinary loss | (1,251.00) | Already accounted for |
| Itemized deductions | (57.00) | Already accounted for |
| Total: | 6,283.17 | 34,332 |

Petitioners argue the two-step process described above was not the proper method to compute and allocate COD income to petitioner. They complain that the two-step process resulted in an allocation of COD income to petitioner that substantially exceeds his percentage interest in profits and losses as shown by his Schedule K-1 for 1992, the taxable year in issue. Petitioners also argue respondent's Rule 155 computation did not take the adjustment items into account.

Issue 1. Whether the Proper Method Was Used To Compute and Allocate Finley Kumble COD Income to Petitioner

Petitioners argue that, in accordance with Finley Kumble's 1992 Form 1065 and Schedule K-1, petitioner's increased distributive share of Finley Kumble's COD income should be

$7,482.17 (Finley Kumble's total COD income of $55,777,452, multiplied by petitioner's 0.0170-percent interest in Finley Kumble's profits and losses, minus the $2,000 credit for the COD income actually reported by petitioners on their return).

Respondent argues the Court lacks jurisdiction to review the allocation of COD income to petitioner because such allocation is a partnership item that could only have been raised in the prior TEFRA proceeding. Respondent also argues petitioners are raising new issues in the Rule 155 computation.

We hold, pursuant to our opinion in Blonien v. Commissioner, 118 T.C. 541 (2002), that the Court does not have jurisdiction to consider the proper methodology to allocate Finley Kumble COD income to petitioner because such allocation is a partnership-level item that was determined in the partnership-level TEFRA proceeding. Moreover, petitioners' objection to respondent's computation is an attempt to raise a new issue we would not address at this stage of the proceedings even if we did have jurisdiction.

a.  Jurisdiction To Review Method Used To Compute and Allocate COD Income

We agree with respondent that we have no jurisdiction to consider the allocation of COD income to petitioner because such allocation is a partnership item. We have no jurisdiction to consider partnership items in a partnership-level deficiency

proceeding. Id. at 550-552; GAF Corp. v. Commissioner, 114 T.C. 519 (2000); Maxwell v. Commissioner, 87 T.C. 783 (1986).

Items determined at the partnership level include the amount of, and each partner's distributive share of, partnership items of income. Dakotah Hills Offices Ltd. Pship. v. Commissioner, T.C. Memo. 1996-35; sec. 301.6231(a)(3)-1(a)(1), (4), Proced. & Admin. Regs.

The amount of Finley Kumble's COD income and each partner's share of such COD income are partnership items. See sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs. The first and second steps of respondent's allocations to petitioner of his distributive share of COD income are items determined at the partnership level.

The decision on the method of allocating partnership income is a partnership-level determination. The allocation and computation of COD income to petitioner under the two-step process must be and was determined at the partnership level because it affects the allocation of the remaining COD income to all the other partners.

We do not have jurisdiction to review the method used to compute and allocate Finley Kumble COD income to petitioner.

b. New Issue in a Rule 155 Proceeding

Generally, new issues may not be raised in a Rule 155 proceeding. Rule 155(c); Harris v. Commissioner, 99 T.C. 121,

123 (1992); Gladstone v. Commissioner, T.C. Memo. 1992-10.  That is because, as relevant here, the record would have to be reopened in order to permit petitioners to introduce the spreadsheet into evidence to establish a discrepancy between petitioners' and respondent's computations of petitioner's Finley Kumble COD income.  See Harris v. Commissioner, supra at 124; Cloes v. Commissioner, 79 T.C. 933, 937 (1982).  Issues considered in a Rule 155 proceeding are limited to "purely mathematically generated computational items".  The Home Group, Inc. v. Commissioner, 91 T.C. 265, 269 (1988), affd. on another issue 875 F.2d 377 (2d Cir. 1989).  Petitioners do not claim there is a mathematical error or that the formula resulting from application of the two-step process was improperly applied; rather they argue the two-step process was not the proper method to allocate COD income.

The notice of deficiency, notice of final partnership administrative adjustment, and petitioner's Schedule K-1 gave petitioners notice of the amount of COD income allocated to petitioner.  Petitioners did not provide any reasons why they failed to raise this issue prior to the Rule 155 computation.  We did not find or hold in our prior opinion that petitioner's .0170-percent profits or capital interest should or did determine the amount of COD income that should be allocated to petitioner.

Because the resolution of the issue of the proper method used to allocate COD income is a matter that would require the Court to consider new evidence, i.e., the terms of the closing agreement and spreadsheet, not presented at the original proceeding, we would not consider the issue at the Rule 155 proceeding. See <u>Bankers Pocahontas Coal Co. v. Burnet</u>, 287 U.S. 308, 313 (1932) (prohibiting taxpayer from raising new issue in postdecision tax deficiency proceeding: "It is not shown that the evidence tendered was not available to the petitioner in ample time to present it before the Board had made and filed its findings of fact and opinion."); <u>Paccar, Inc. v. Commissioner</u>, 849 F.2d 393, 400 (9th Cir. 1988) ("a further trial is exactly what is not permitted under Rule 155"), affg. 85 T.C. 754 (1985); <u>Cloes v. Commissioner</u>, <u>supra</u> at 937.

<u>Issue 2. Whether Downward Adjustments to Petitioners' Income Listed in Respondent's Form 4549A-CG Were Omitted From Respondent's Rule 155 Computation</u>

Petitioners argue the adjustment items were not reflected in respondent's Rule 155 computation.

Respondent took the adjustment items into consideration in his Rule 155 computation. In issuing the notice of deficiency, respondent reduced petitioners' taxable income by $1,199 from $254,590 reported on petitioners' 1992 return to $253,391 to take the adjustments items into account.

———————————————

Having sustained respondent's determinations and computations without having reached the merits of petitioners' arguments and objections, we make some final observations. We make these observations to allay any impression--which petitioners have tried to create, in arguing their case and in contesting respondent's Rule 155 computations--that petitioner has been treated unfairly in the TEFRA proceeding and in this proceeding.

In making these observations, we do not intend to belittle the economic insecurity and resulting aggravation and anxiety that petitioner experienced in having been induced to join a law firm that was about to go under. But these are matters for which the tax law provides no redress; we still would have sustained respondent's determination and adopted respondent's computations, even if we had been able to rule on the merits of petitioner's arguments and objections.

In 1987, the year Finley Kumble announced its dissolution, petitioner received cash distributions, in the form of partnership draws, that substantially exceeded his share of partnership profits. As a result, petitioner had a negative capital account at the end of 1987 that could only go more negative in the intervening years until 1992, the taxable year in issue. In that year, petitioner agreed with the Finley Kumble bankruptcy trustee to make a $15,000 capital contribution with

interest over 10 years, which still left him with a negative capital account.

As a general rule, absent an agreement to the contrary, a partner will be liable to a partnership to the extent of such partner's negative capital account balance upon dissolution of the partnership.  See sec. 1.704-1(b)(2)(ii)(b)(3), (c), Income Tax Regs.

For tax and accounting purposes, Finley Kumble first allocated COD income to petitioner and other partners to reduce their negative capital accounts and then allocated the remaining COD income to petitioner and all other partners in proportion to their contributions to the partnership under the bankruptcy plan. The restoration of the balance of petitioner's negative capital account was accomplished by the first-step allocation of the partnership's COD income resulting from the discharge of its debts in the bankruptcy proceeding; the second-step allocation allocated the remaining COD income to petitioner and the other partners in proportion to their capital contributions.

All in all, the partnership-level TEFRA proceeding seems to have led to a sensible tax result insofar as petitioner is concerned.  In 1987, petitioner realized tax benefits from Finley Kumble in the form of losses that reduced his distributive share of partnership income to less than his actual distributions received, which was a contributing factor in causing his capital

account to go negative. The determinations in the partnership-level TEFRA proceeding--to which we are bound to give effect--have resulted in the recapture of those tax benefits and also take into account the current economic benefit petitioner realized as a partner in 1992 from the discharge of his share of the remaining liability to the firm's creditors. What goes around comes around.

To reflect the foregoing,

Decision will be entered
in accordance with respondent's
computations.