T.C. Memo. 2009-243

UNITED STATES TAX COURT

DONALD W. AND KATHRYN W. WALLIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8818-08.                    Filed October 27, 2009.

<u>Donald W. Wallis</u>, for petitioner.

<u>William F. Barry IV</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  The parties submitted this case fully
stipulated pursuant to Rule 122.  Respondent determined a
deficiency in petitioners' Federal income tax of $33,414 and a
penalty under section 6662(a) of $6,684 for 2005.  The issues for
determination are:  (1) The characterization (capital gain or
ordinary income) of "Schedule C Benefits" totaling $80,000 that

Donald W. Wallis (petitioner) received from Holland & Knight, LLP, a Florida limited partnership engaged in the practice of law (hereinafter referred to as Holland & Knight or the law firm), in connection with his withdrawal as a partner; (2) the characterization (capital gain or return of basis) of $32,721 that petitioner received from Holland & Knight for his capital account; and (3) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

Petitioners did not include in income, either as capital gain or ordinary income, any of the approximately $112,721 petitioner received from Holland & Knight in 2005 (the $80,000 of Schedule C Benefits and the $32,721 for petitioner's capital account). Petitioners now agree that the $80,000 petitioner received from Holland & Knight in 2005 designated as Schedule C Benefits should have been included in income. However, the parties disagree as to the characterization of the Schedule C Benefits. Petitioners contend the Schedule C Benefits were long-term capital gain income, whereas respondent contends these amounts were ordinary income.

The statutory notice of deficiency issued to petitioners on February 19, 2008, did not include an adjustment relating to the $32,721 petitioner received from Holland & Knight in 2005 for his capital account. As a result of information discovered during the discovery and stipulation processes, respondent filed an

Amendment to Answer requesting an increased deficiency on the basis that all or most of the $32,721 petitioner received from Holland & Knight in 2005 for his capital account should have been reported as long-term capital gain. Petitioners contend that all of the $32,721 is a return of petitioner's basis in Holland & Knight and therefore is not taxable.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for 2005, all Rule references are to the Tax Court Rules of Practice and Procedure, and all dollar amounts are rounded to the nearest dollar.

## Background

We adopt as findings of fact all statements contained in the stipulation of facts and supplemental stipulation of facts. The stipulation of facts, supplemental stipulation of facts, and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Florida when they filed their petition. Kathryn W. Wallis is a party hereto as a consequence of filing a joint return with Donald W. Wallis.

Petitioner has been a practicing tax lawyer for approximately 35 years and is a member of the bar of this Court. On August 1, 1989, petitioner joined Holland & Knight as a Class C partner in its Jacksonville, Florida, office. Upon joining the law firm, petitioner and Holland & Knight entered into a Memorandum of Agreement which governed their relationship.

At all relevant times, Holland & Knight had three classes of partners.

(1) <u>Class A</u>    Class A partners are not expected to spend full time in the practice of law and are not required to contribute to the capital of the firm.

(2) <u>Class B</u>    Class B partners are expected to spend full time in the practice of law and in the discharge of other responsibilities on behalf of the firm.  They are the principal partners in the firm.  There are two categories of Class B partners; namely, Class B (Capital) partners and Class B (noncapital) partners.  Class B (Capital) partners are the equity partners, whereas, Class B (noncapital) partners have no equity or ownership interest in the law firm.

(3) <u>Class C</u>    Class C partners are affiliated with the law firm on a nonownership basis and are not required to contribute to the firm's capital.  As a general rule, the professional experience of a Class C partner exceeds that of an associate. Class C partners may receive financial data generally available to partners, sign checks, attend partnership meetings as nonvoting participants, and represent to others that they are partners.

In addition, the managing partner of the law firm can bestow the honorary title "partner emeritus" on certain former

partners of the law firm.  A partner emeritus has no rights or obligations as a partner in the law firm.

On January 1, 1991, petitioner became a Class B (Capital) partner.  Petitioner and Holland & Knight did not enter into a new bilateral agreement.  Instead, petitioner's new partnership status was governed by the Holland & Knight Partnership Agreement (hereinafter referred to as the Partnership Agreement).

As a Class B (Capital) partner, petitioner received 50 "Schedule C Units" each year.[1]  Each Schedule C Unit had a stated value of $300, so that the units yearly awarded to each Class B (Capital) partner, including petitioner, had an aggregate value of $15,000.  The granting of Schedule C Units each year was a benefit or entitlement awarded to each Class B (Capital) partner per capita.  The amount and the award of the Schedule C Unit benefits were determined without regard to the profits of the law firm.  Further, the dollar value of Schedule C Units was not reserved or otherwise set aside by the law firm.  If a partner voluntarily left the law firm, he generally forfeited the value of his Schedule C Units.  The awarding of Schedule C Units was discontinued in 2002.

Paragraph 27.01 of the Partnership Agreement provided that upon attaining age 68, a Class B (Capital) partner was entitled

---

[1]The term "Schedule C Unit" has no meaning or significance outside the context of the Partnership Agreement.

to receive the value of his interest in the partnership, consisting of the sum of (1) the amount of his capital account (as disclosed in the firm's books and records) as of the fiscal year in which he reached age 68, and (2) the value of his Schedule C Units.  Payment of this sum was to begin 3 months after the first day of the fiscal year following the partner's 68th birthday.

While a Class B (Capital) partner, petitioner made all required contributions to the capital of Holland & Knight.[2] Petitioner's capital obligation fluctuated as the amount of his annual distributive share of the law firm's profits fluctuated. The law firm prepared, and provided petitioner with, an annual statement reflecting the amount of his capital contribution obligation. Petitioner also received quarterly statements reflecting deposits made to, withdrawals made from, interest accrued on, and the current balance of, his capital account.

As of January 1, 2003, petitioner ceased to be a Class B (Capital) partner, and his status reverted to Class C partner. As part of that conversion, petitioner and Holland & Knight entered into a Class C Partner Agreement which modified the Partnership Agreement as it affected the rights and

---

[2]Pursuant to the Partnership Agreement, Class B (Capital) partners were required to contribute capital to, and maintain a capital account with, Holland & Knight in an amount determined by its managing partner.

responsibilities of petitioner vis-a-vis Holland & Knight. Attached to the Class C Partner Agreement was a schedule, dated March 7, 2003, showing petitioner's capital account balance to be $98,162.

On March 19, 2003, petitioner withdrew as a Class C partner, and he ceased performing services for the law firm. Upon his withdrawal petitioner received a document from the law firm entitled "Withdrawal Benefits Analysis" (the benefits due schedule) showing the amounts owed him by Holland & Knight and the dates payments were to be made. The benefits due schedule reflected petitioner's partnership interest to be $338,162, of which $98,162 was designated as Schedule B Regular Capital and $240,000 as Schedule C Withdrawal Benefits.[3] The document scheduled the amounts to be paid to petitioner into 12 payments of approximately $28,180 each, of which approximately $8,180 was deemed a distribution of capital and $20,000 as a Schedule C Unit payment.

From 1991 until the date petitioner withdrew from Holland & Knight, petitioner annually received from the law firm a Schedule K-1 (Form 1065), Partner's Share of Income, Deductions, Credits, etc., on which was reported petitioner's capital contributions

---

[3]Sec. 6(a) of the Class C Partner Agreement defined the value of petitioner's capital account and Schedule C Units as the amount reflected on Schedule No. 1 to the Class C Partner Agreement.

during the year, petitioner's distributive share of the law firm's profits, petitioner's share of the law firm's tax-exempt income, and the amount of petitioner's withdrawals and distributions.  Copies of the Schedules K-1 were submitted by the law firm to the Internal Revenue Service.

Petitioner's Schedules K-1 reported the following information:

(1) petitioner's contributions to Holland & Knight from 1991 through 2003 totaled $111,756;

(2) petitioner's share of the taxable income of Holland & Knight from 1991 to 2003 totaled $2,780,394;[4]

(3) petitioner's share of the tax-exempt income of Holland & Knight from 1991 to 2003 totaled $422;

(4) distributions petitioner received from Holland & Knight from 1991 to 2003 totaled $2,892,173.

On the basis of these Schedules K-1, respondent determined that (1) petitioner received $111,357 of distributions in excess of the amount of his share of Holland & Knight's taxable and tax-exempt income, and (2) petitioner's basis in Holland & Knight as

---

[4]Our review of petitioner's Schedules K-1 indicates that petitioner's share of the taxable income of Holland & Knight from 1991 to 2003 totaled $2,779,764.  Nonetheless, we use the $2,780,394 amount (as determined by respondent) because the use of that amount is more beneficial to petitioner since it provides him with additional basis to offset the payments received in respect of his capital account.

of March 19, 2003 (the date he withdrew from the law firm), was $399.

The Schedule K-1 for 2002 reports petitioner's capital account at the end of that year to be $10,758, which is the same amount as reported on the Schedule K-1 for 2003 as petitioner's capital account for the beginning of that year.

After his withdrawal from Holland & Knight, petitioner's financial relationship with the law firm was governed by the law firm's Partnership Agreement and Class C Partner Agreement.

Section 6 of the Class C Partner Agreement governed the payments to be made to petitioner with respect to his capital account and his Schedule C Benefits.  Section 6(b) of the Partnership Agreement provided that with respect to the payment of petitioner's capital account:

> Until the first payment of the Capital Amount has been made, *WALLIS* shall earn, and Holland & Knight shall pay, interest on the Capital Amount (to the same extent payable to Class B (Capital) partners) in accordance with the policy established by the Managing Partner pursuant to the Partnership Agreement.  Except in the event of his earlier death, disability, expulsion or withdrawal from the firm, in which event payment of his Capital Account will be made in accordance with procedures identical to those applicable to Class B (Capital) partners pursuant to paragraph 27.05 of the Partnership Agreement, *WALLIS* hereby waives any right to receive payment of his Capital Account until after December 31, 2003.  After December 31, 2003, *WALLIS* shall be entitled to withdraw the Capital Amount at any time on at least thirty (30) [sic] advance written notice to Holland & Knight.  The Capital Amount shall be paid in twelve equal quarterly installments, with the first installment being payable on the first day of the calendar quarter immediately following the date of the notice provided in the preceding sentence.

Section 6(c) of the Partnership Agreement provided that with respect to the payment of the value of petitioner's Schedule C Units:

> Payment of the Schedule C amount shall be made by Holland & Knight to *WALLIS*, or to his estate, on his death, his disability, or his expulsion or withdrawal from Holland & Knight and otherwise in accordance with the procedures identical to those applicable to Class B (Capital) partners pursuant to paragraph 27.05 of the Partnership Agreement.

Paragraph 27.05 of the Partnership Agreement provided for the following payments to be made to a partner who withdrew from the partnership:  Subject to certain limitations, one-twelfth of the total due the retiring partner was to be made within 3 months after the partner's withdrawal and one-twelfth every 3 months thereafter until the full sum is paid.  Paragraph 27.04 of the Partnership Agreement stated that "Payment will not additionally be made for goodwill, trade or firm name, contract and retainer value, work in progress, accounts receivable, accruals, or other tangible or intangible assets of the firm."  Paragraph 27.03 of the Partnership Agreement stated that "For the purposes of the foregoing computation [the payment of a withdrawing partner's interest], the books of the firm will be accepted as correct.  The Managing Partner shall certify the computation, and the certified computation is binding and conclusive."

Pursuant to the aforementioned provisions, Holland & Knight made payments to petitioner and recorded them in a second withdrawal benefits analysis (the benefits paid schedule), as follows:

| Payment Date | Capital | Sch. C | Less Receivable | Pay to Donald Wallis |
|---|---|---|---|---|
| June 19, 2003 | $8,180 | $20,000 | ($8,180) | $20,000 |
| Sept. 19, 2003 | 8,180 | 20,000 | (8,180) | 20,000 |
| Dec. 19, 2003 | 8,180 | 20,000 | (1,044) | 27,136 |
| Mar. 19, 2004 | 8,180 | 20,000 | -0- | 28,180 |
| June 19, 2004 | 8,180 | 20,000 | -0- | 28,180 |
| Sept. 19, 2004 | 8,180 | 20,000 | -0- | 28,180 |
| Dec. 19, 2004 | 8,180 | 20,000 | -0- | 28,180 |
| Mar. 19, 2005 | 8,180 | 20,000 | -0- | 28,180 |
| June 19, 2005 | 8,180 | 20,000 | -0- | 28,180 |
| Sept. 19, 2005 | 8,180 | 20,000 | -0- | 28,180 |
| Dec. 19, 2005 | 8,180 | 20,000 | -0- | 28,180 |
| Mar. 19, 2006 | 8,180 | 20,000 | -0- | 28,180 |

Petitioner received the payments set forth in the column "Pay to Donald Wallis" on or about the date stated in the column labeled "Payment Date". After March 19, 2003, petitioner performed no services for the law firm and received only those payments described in the benefits paid schedule.

In 2005 petitioner received payment for his Schedule C Units totaling $80,000. Because the Schedule C Units were forfeitable, Holland and Knight did not treat the award of the Schedule C Units as income in the year they were awarded. Instead, Holland & Knight considered the Schedule C amounts as additional compensation to the recipient partner in the year the amount was paid.

In 2005 Holland & Knight issued to petitioner, and filed with respondent, a Form 1099-MISC, Miscellaneous Income, reporting $80,000 as nonemployee compensation, the amount it considered as payment for petitioner's Schedule C Units. Holland & Knight deducted this amount as nonemployee compensation in 2005.[5]

Holland & Knight paid petitioner $32,721 with respect to his capital account in 2005.  Holland & Knight did not deduct this amount as nonemployee compensation in 2005.

Petitioners did not include in income any of the payments described in the benefits due schedule or the benefits paid schedule.  On September 10, 2007, respondent sent petitioners a CP 2000 notice stating that petitioners' Form 1040, U.S. Individual Income Tax Return, for year 2005 did not match the income and payment information that respondent had on file and proposing several changes to petitioners' taxes.  Petitioner replied that he disagreed with respondent's proposed changes, stating:

> I did, indeed, receive during the tax year in question
> payments totaling the amount reported to the IRS by Holland

---

[5]In 2003 Holland & Knight issued and filed a Form 1099-MISC reporting $60,000 of nonemployee compensation, the amount Holland & Knight considered to be payments during 2003 for petitioner's Schedule C Units.  Holland & Knight issued a Form 1099-MISC in 2004 reporting $80,000 of nonemployee compensation and a Form 1099-MISC in 2006 reporting $20,000 of nonemployee compensation representing payments for petitioner's Schedule C Units for those years.

& Knight, LLP.  However, the reporting of these payments by Holland & Knight, LLP on Form 1099-MISC and the characterization of these payments as "non-employee compensation" were inaccurate.  Instead, these payments are accurately characterized as, and should have been reported as, cash distributions by a partnership to a withdrawing partner in complete liquidation of his partnership interest.  Under the circumstances, none of these payments constituted income, and none of these payments is required to be included in income on my tax return for the tax year in question.

As stated supra p. 2, petitioners now concede that they should have reported on their tax return for 2005 the $80,000 petitioner received for his Schedule C Units and the $32,721 petitioner received with respect to his capital account. However, as stated supra p. 2, petitioners contend the $80,000 should be characterized and taxed as long-term capital gain, whereas respondent contends the $80,000 should be characterized and taxed as ordinary income.

Additionally, petitioners and respondent disagree as to the amount of petitioner's basis in Holland & Knight.  Petitioners contend that petitioner's basis in Holland & Knight as of March 19, 2003, was $98,162, which is the same amount stated as the amount of petitioner's partnership capital account in both the schedule attached to the Class C Partner Agreement, see supra p. 7, and the benefits due schedule, see supra p. 7.  In contrast, respondent maintains that petitioner's capital account balance in the law firm was $10,758 as of January 1, 2003, and that

petitioner's basis in Holland & Knight as of March 19, 2003, was approximately $399.  See supra pp. 8-9.

## Discussion

I.  Characterization of the Amount Paid for the Schedule C Units[6]

Payments made by a partnership in liquidation of the interest of a retired partner are governed by section 736,[7] which divides such payments into three categories; namely:  (1) Those representing the recipient's distributive share of partnership income, sec. 736(a)(1); (2) those deemed to be guaranteed payments, sec. 736(a)(2); and (3) those in exchange for the partner's interest in partnership property, sec. 736(b).[8]  If the payments are considered to represent a distributive share of partnership income or deemed to be guaranteed payments, then the amount of the payments received is taxed to the recipient as ordinary income.  On the other hand,

---

[6]Petitioners assert respondent bears the burden of proof with respect to this issue.  We need not, and do not, address petitioners' assertion because our conclusion with respect to this issue does not turn on who bears the burden of proof.

[7]Neither party asserts that the transaction giving rise to the payment to petitioner constituted a sale or exchange of an interest in a partnership within the purview of sec. 741.

[8]For purposes of sec. 736(b), if capital is not a material income-producing factor for the partnership and the retiring partner was a general partner, payments in exchange for an interest in partnership property do not include (A) unrealized receivables or (B) goodwill, except to the extent that the partnership agreement provides for a payment with respect to goodwill.  Sec. 736(b)(2).

if the payments are considered to be in exchange for partnership property, then the amount received in excess of the adjusted basis of the withdrawing partner's partnership interest is taxed as capital gain. We find and hold that the payments for petitioner's Schedule C Units are guaranteed payments.

The record reveals that each partner received the same number (50) of Schedule C Units each year for services rendered to the law firm regardless of the size of the partner's partnership interest in Holland & Knight and without regard to the income of the law firm. The Schedule C Units were not treated as part of the partners' respective shares of partnership income or partnership property and were not reflected in the partners' respective capital accounts. Further, the law firm did not establish a reserve or any other account to reflect the value of the Schedule C Units. Finally, the Partnership Agreement states that a partner would receive the value of his Schedule C Units within 3 months after the first day of the fiscal year following the partner's 68th birthday.

It appears to us that Holland & Knight's creation of the Schedule C Units program was a means by which the law firm provided retirement benefits to its equity partners, since after

December 31, 1991, the law firm had no retirement plan as such.[9] The value of the Schedule C Units provided the measurement for the retirement amounts to be paid to each of the law firm's equity partners, and the source of payment of those amounts was the future revenues of the law firm.

We have previously held that retirement payments paid to a withdrawing partner as part of the liquidation of his partnership interest under section 736 are guaranteed payments. Sloan v. Commissioner, T.C. Memo. 1981-641. In Sloan, we had to determine the proper characterization of payments to a retiring doctor/partner after the medical partnership dissolved. The partnership agreement that governed the three partners provided that if one of the partners retired, he would be paid (1) the equity in his capital account, and (2) a sum (the additional amount) equal to one-twelfth of the gross annual income during the 12 months next preceding the date of his withdrawal. The retiring partner had the option to elect to receive the additional amount either in a lump sum or over a period of 12 months or less. The partnership agreement further provided that the partner had to completely retire from the practice of medicine to be eligible for the additional amount.

---

[9]The historical note to para. 32 of the Partnership Agreement states that the law firm discontinued its retirement plan as of Jan. 1, 1992.

Because of disagreements between the partners, the partnership ultimately dissolved, with one partner opting to retire and the two other partners opting to establish a new partnership. The three former partners entered into a partnership termination agreement, which provided that in addition to dividing the partnership assets the retiring partner would receive $2,000 a month as retirement pay over a period of 18 months. We determined that (1) a liquidation of the retiring partner's interest had occurred, and (2) the $2,000-a-month payments were guaranteed payments pursuant to section 736(a)(2).

Our conclusion in Sloan is consistent with the Commissioner's treatment of similar payments. In Rev. Rul. 75-154, 175-1 C.B. 186, the Commissioner determined that periodic payments made in satisfaction of a partnership liability to a previously retired partner, in addition to amounts previously paid to the retired partner for his interest in partnership property, were guaranteed payments because they were determined without regard to the income of the partnership.

We are also mindful that section 1.707-1(c), Income Tax Regs., provides:

> Payments made by a partnership to a partner for services or for the use of capital are considered as made to a person who is not a partner, to the extent such payments are determined without regard to the income of the partnership. However, a partner must include such payments as ordinary income for his taxable year within or with which ends the partnership taxable year in which the partnership deducted

such payments as paid or accrued under its method of accounting.   * * *

Petitioners contend that the payments for petitioner's Schedule C Units were made in exchange for his interest in Holland & Knight and therefore the payments should be considered as a distribution as that term is used in section 736(b)(1). Petitioners base their position on paragraph 27.01 of the Partnership Agreement, which states that with respect to a withdrawn Class B (Capital) partner the value of the partner's interest in the firm is the sum of his capital account and his Schedule C amount.  Continuing, petitioners maintain that section 1.736-1(b)(1), Income Tax Regs., provides that "Generally, the valuation placed by the partners upon a partner's interest in partnership property in an arm's length agreement will be regarded as correct."  Finally, petitioners posit that since the valuation set forth in the Partnership Agreement reflects the "valuation placed by the partners" in Holland & Knight, the valuation of petitioner's partnership interest must be regarded as correct and therefore the payments are for partnership property.  We do not subscribe to petitioners' contention.

Paragraph 27.01 of the Partnership Agreement does not define petitioner's Schedule C Units as partnership property.  Moreover, section 736 makes clear that payments for a partner's interest in a partnership may be made up of distributions for partnership property as well as guaranteed payments.  In this regard, section

1.736-1(a)(2), Income Tax Regs., provides, in part, that the amounts paid to a withdrawing partner may represent several items and the payments must be allocated between payments for the value of the withdrawing partner's interest in assets, except unrealized receivables and, generally, goodwill, sec. 736(b), and other payments, sec. 736(a).  As provided in the Partnership Agreement, Holland & Knight allocated the payments to petitioner between petitioner's capital account and the value of his Schedule C Units.

## II.   Characterization of Petitioner's 2005 Capital Account Distribution

Respondent included an adjustment to petitioner's 2005 income for the $32,721 capital account distribution for the first time in his Amended Answer.  Consequently, respondent concedes that he bears the burden of proof with respect to this adjustment.  See Rule 142(a)(1); Achiro v. Commissioner, 77 T.C. 881, 889 (1981); Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 856 (1957).  That the parties submitted this case fully stipulated under Rule 122 does not affect which party has the burden of proof or the effect of a failure of proof.  See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Both parties agree that petitioner's capital account payments are distributions of partnership property to a withdrawing partner and are governed by the provisions of section

736(b). Section 731(a)(1), governing the recognition of gain or loss on partnership distributions, provides, in part, that gain is not recognized to the recipient partner except to the extent of any money distributed in excess of the adjusted basis of the partner's interest in the partnership immediately before the distribution. In this regard, a liquidating partner generally does not recognize gain on liquidating payments paid over a period of time until the aggregate amount of the payments exceeds the partner's basis in the partnership interest.[10]

Section 705(a) provides, in part, that a partner's adjusted basis in a partnership is the basis of the interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests) increased by the sum of the partner's distributive share of income (taxable and tax exempt) of the partnership for the taxable year and prior taxable years (as determined pursuant to section 703(a)) and decreased by distributions by the partnership as provided in section 733.

Section 722 provides that the basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of any money and

---

[10]However, if the payments are fixed in amount the partner may elect to prorate his adjusted basis among the payments and recognize gain or loss on receipt of each payment. See sec. 1.736-1(b)(6), Income Tax Regs.

the adjusted basis of other property to the contributing partner at the time of contribution, increased by the amount of any gain recognized under section 721(b) to the contributing partner at the time of contribution.

Both respondent and petitioners rely on their respective calculations of petitioner's capital account in Holland & Knight in determining petitioner's basis in the law firm. But the parties differ as to the amount of petitioner's capital account.[11] We must resolve this dispute using only the facts that were stipulated.

Respondent contends that the $32,721 capital account payment to petitioner should have been reported as long-term capital gain.[12] To support his contention, respondent introduced petitioner's Schedules K-1 for years 1991 through 2003. Relying on the capital account information provided in Item J on the Schedules K-1 reported by Holland & Knight, respondent calculated that petitioner made a total capital contribution of $111,756 to the law firm, that his distributive share of Holland & Knight's income from 1991-2003 aggregated $2,780,394, that his share of Holland & Knight's tax-exempt income was approximately $422, and

_____

[11]As a partner in a service partnership, the amount of petitioner's capital account and the amount of petitioner's basis in Holland & Knight in general should be the same.

[12]Under respondent's position, petitioner would have exhausted his $399 basis in his capital account in 2003.

that he received distributions totaling $2,892,173 from 1991 through 2003. Thus, respondent concluded that petitioner's capital account when he left Holland & Knight in 2003 was $399.

In contrast, petitioner maintains that his basis in Holland & Knight on January 1, 2005, was in excess of the $32,721 he received. To support their position, petitioners rely on several schedules created by Holland & Knight in the regular course of its business. The first schedule, attached to the Class C Partner Agreement, shows the value of petitioner's capital account to be $98,162 on the date petitioner ceased to be a Class B (Capital) partner and became a Class C nonequity partner. In addition, the benefits due schedule, discussed supra p. 7, showed that petitioner's capital account on March 19, 2003, the date of petitioner's withdrawal from the law firm, was $98,162. Further, the benefits paid schedule, discussed supra p. 11, showed that petitioner's capital account was $98,162 before the distributions began and that as of March 19, 2005 (the date of the first distribution in 2005), petitioner's capital account was approximately $40,900.

We are therefore confronted by two sets of capital account calculations both created by Holland & Knight in the regular course of its business. On the one hand, the Schedules K-1 relied upon by respondent were reported by the law firm to respondent in compliance with the tax reporting requirements of

section 6031.  On the other hand, the schedules relied upon by petitioner were created by Holland & Knight to track petitioner's capital account and, ultimately, to determine the law firm's payments to petitioner in liquidation of his interest in the partnership.  Holland & Knight had an interest in accurately calculating the amounts that were entered on both the Schedules K-1 (to comply with the reporting requirements of the Code) and the schedules provided to petitioner (to ensure that petitioner was given the proper amount for his interest in the partnership).

Respondent has the burden of proof with respect to establishing (1) petitioner's basis in his partnership property, and (2) the payments in liquidation of his capital account exceeded that basis.  Petitioner established a reasonable basis for us to determine that his 2005 capital account payments did not exceed his basis in his partnership property.  Respondent did not address petitioner's evidence on brief and has not given us any reason to believe his calculation is more reliable than that of petitioner.  Consequently, on the basis of the record before us, we conclude that there was no preponderance of evidence to support respondent's position and that respondent failed to carry his burden of establishing that the payments in liquidation of petitioner's partnership property exceeded his basis.  Hence, we find in favor of petitioner with respect to this issue.

III.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, inter alia, a substantial understatement of income tax, as provided in section 6662(b)(2), or negligence or disregard of rules or regulations, as provided in section 6662(b)(1).  An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return.  Sec. 6662(d)(2)(A).  The understatement for an individual is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1)(A).  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Jean Baptiste v. Commissioner, T.C. Memo. 1999-96.

Section 7491(c) provides that the Commissioner has the burden of production with respect to penalties and must come forward with sufficient evidence indicating it is appropriate to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met his burden of production, the burden of proof remains on the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  Id. at 446-447.  With respect to the payments for petitioner's Schedule C Units,

respondent's burden of production is met by petitioners' concession that they failed to report these payments.

Section 6662(a) penalties are inapplicable to the extent the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id. An honest misunderstanding of fact or law that is reasonable in the light of the taxpayer's experience, knowledge, and education may indicate reasonable cause and good faith. Halby v. Commissioner, T.C. Memo. 2009-204; Remy v. Commissioner, T.C. Memo. 1997-72.

Respondent determined that petitioners are liable for a section 6662(a) accuracy-related penalty for 2005 with respect to their failure to report the amounts received for petitioner's Schedule C Units and capital account. Petitioners assert that their failure to report the $80,000 of payments for petitioner's Schedule C Units in 2005 was reasonable because Holland & Knight incorrectly reported these payments as nonemployee compensation on Form 1099-MISC instead of reporting it as a distribution on Schedule K-1. Petitioners maintain that it was reasonable for

them to not report the $80,000 on their 2005 Federal income tax return since they "could not possibly report the receipt of the payments both correctly and also in a manner that was consistent with the reporting" by Holland & Knight.  We find this argument unpersuasive.

Preliminarily, we note petitioners' argument is circular. In any event, the Code provides a mechanism whereby a partner may report an item of income inconsistently with the manner in which the partnership reports the item on its own return, so long as the partner provides a statement reporting that inconsistent treatment to the Secretary.  See sec. 6222(b)(1)(B); sec. 301.6222(b)-1(a), Proced. & Admin. Regs.[13]  The Schedule K-1 instructions require the partner to file Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), in order to notify the Commissioner of the inconsistent treatment.  A partner is subject to the section 6662(a) accuracy-related penalty if he fails to comply with this requirement.  See sec. 6222(d); Blonien v. Commissioner, 118 T.C. 541, 550 n.5 (2002).  Petitioner, as a tax attorney of long standing, should be familiar with this mechanism.  To simply not report the income is not reasonable and does not show good faith.  We therefore find the section 6662(a) accuracy related penalty is applicable

---

[13]Petitioners do not argue they received information from Holland & Knight inconsistent with the partnership return. Therefore sec. 6222(b)(2) does not apply.

with respect to petitioner's failure to report the $80,000 of payments for petitioners' Schedule C Units.

With respect to petitioner's capital account payments, respondent did not establish that a deficiency exists. Hence, the section 6662(a) penalty is not applicable with respect to those payments.

To reflect the foregoing,

<u>Decision will be entered for respondent in the amounts set forth in the notice of deficiency</u>.